*Decision will be entered for the respondent.*

MARGARET TERZIAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5861–77.    Filed September 25, 1979.

*Christian X. Kouray,* for the petitioner.
*Willard J. Frank* and *W. Terrence Mooney,* for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax for the calendar years 1969, 1970, and 1971 in the amounts of $21,119.35, $31,142.19, and $36,883.04, respectively.

The only issue for decision is whether petitioner is an innocent spouse within the meaning of section 6013(e), I.R.C. 1954,[1] so as to be relieved from liability for income taxes for the years in issue.

## FINDINGS OF FACT

Margaret Terzian (petitioner) resided in Scotia, N.Y., at the time of the filing of her petition in this case. For the years 1965 through 1971, she filed joint Federal income tax returns with her husband, Peter Terzian, with the District Director of Internal Revenue, Albany, N.Y. Petitioner signed the 1971 return on March 3, 1972. No date appears after petitioner's signature on the 1969 and 1970 returns. They were signed by her husband on March 22, 1970, and March 11, 1971, respectively.

Petitioner, who was 53 years old at the time of the trial of this case, married Peter Terzian on December 18, 1948, in New York. Petitioner and her husband had four children, the youngest of whom was 19 at the time of the trial of this case. Peter Terzian had received his M.D. degree and was a physician prior to the time he and petitioner were married. During the years 1965 through 1971, petitioner's husband, Dr. Terzian, was engaged in a private medical practice as an obstetrician and gynecologist in Scotia, N.Y. Petitioner received a B.S. degree in education and was a school teacher for 2 years prior to the time she and Dr. Terzian were married. She was not employed outside her home during the time they were married and was not so employed at the time of the trial of this case. At the time of the trial of this case, petitioner had a suit for divorce pending against Dr. Terzian. In this divorce proceeding, no claim for alimony was made.[2]

During the time petitioner and Dr. Terzian were married and living together, all financial affairs of the family were handled by Dr. Terzian. He paid all the bills and would leave some cash with petitioner for purchases of food and incidental items. The family home was in his name only.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

[2] Petitioner attached to her brief filed Jan. 17, 1979, a copy of the final decree of divorce entered on Dec. 29, 1978, approximately 6 weeks after the conclusion of the trial of this case. No award of alimony was made in the decree. Obviously, the divorce decree is not part of the evidence. However, respondent made no objection to the document as attached to petitioner's brief.

Dr. Terzian was indicted on March 28, 1972, under section 7201, for willful attempt to evade income tax for the calendar year 1968. He was convicted of the charge in the United States District Court, Northern District of New York, upon a plea of guilty, on April 2, 1973. On April 11, 1973, Dr. Terzian appealed to the United States Court of Appeals for the Second Circuit from the judgment entered on April 2, 1973, by the United States District Court for the Northern District of New York. On September 28, 1973, the United States Court of Appeals for the Second Circuit affirmed the judgment entered by the District Court. Dr. Terzian was sentenced on his conviction to 6 months in prison and to pay a fine of $5,000. After Dr. Terzian was released from prison, he resumed his medical practice for a short while. In 1974, Dr. Terzian left petitioner to reside elsewhere. At the time Dr. Terzian left petitioner, he gave her the bankbook of a joint bank account they had in Montreal, which contained approximately $155,000. He stated to her that this was hers and what she would have for herself. Later in 1974, Dr. Terzian returned and he and petitioner lived together until 1976 when he left again. However, the only amount which Dr. Terzian has given to petitioner is the $155,000 which he gave to her in 1974 when he left her the first time.

Respondent determined deficiencies in the income tax of petitioner and Dr. Terzian for the calendar years 1965, 1966, 1967, and 1968 and additions to tax under section 6653(b) for those years in the following amounts:

| Year | Deficiency in income tax | Addition to tax sec. 6653(b) |
|---|---|---|
| 1965 ........... | $12,811.92 | $6,405.96 |
| 1966 ........... | 17,132.17 | 8,566.09 |
| 1967 ........... | 17,436.82 | 8,718.41 |
| 1968 ........... | 17,104.62 | 8,552.31 |

Dr. Terzian filed a petition in the United States Tax Court from this determination, T.C. docket No. 2101–74. On June 16, 1976, this Court entered an order of dismissal and decision in Dr. Terzian's case for the years 1965 through 1968 in which it was ordered and decided that there were deficiencies in income tax and additions to tax in exactly the same amounts as determined in respondent's notice of deficiency as heretofore set forth. The major adjustment in Dr. Terzian's tax for the years 1965

through 1968 was the determination by respondent that Dr. Terzian had additional receipts from his medical practice in the following amounts:

| Year | Additional medical receipts | Year | Additional medical receipts |
|------|------|------|------|
| 1965 ...... | $30,273.14 | 1967 ..... | $33,480.71 |
| 1966 ...... | 32,735.07 | 1968 ..... | 30,164.80 |

On November 8, 1973, Dr. Terzian addressed a letter to the Internal Revenue Service in which he stated that he had income for the calendar years 1969 through 1972 which was not reported on his tax returns in the following amounts:

| Year | Additional income | Year | Additional income |
|------|------|------|------|
| 1969 ........ | $46,372 | 1971 ........ | $77,619 |
| 1970 ........ | 65,438 | 1972 ........ | 42,356 |

During the years 1970 and 1971, Dr. Terzian had the following bank accounts in which deposits were made as indicated:

| | Bank accounts | Deposits 1970 | Deposits 1971 |
|---|------|------|------|
| 1. | Schenectady Trust Co., account No. 6339364[1] ........ | $38,647.94 | $35,457.84 |
| 2. | Bank of Montreal, account No. T14226[2] .............. | 60,183.34 | 35,938.40 |
| 3. | Schenectady Savings Bank, account No. 5001GG1 ... | 7,100.00 | 3,500.00 |
| 4. | Schenectady Savings Bank, account No. 5001GG2 ... | 7,100.00 | 3,766.56 |
| 5. | Schenectady Savings Bank, account No. 6002746 ..... | 3,000.00 | --- |
| 6. | Fidelity Federal Savings & Loan Association of Glendale, account No. 111730 ...................... | 3,000.00 | --- |
| 7. | Fidelity Federal Savings & Loan Association of Glendale, account No. 111731 ...................... | 3,450.00 | --- |
| 8. | Schenectady Savings & Loan Association, account No. 34164 ..................................... | 2,000.00 | --- |
| 9. | Schenectady Savings & Loan Association, account No. 57434 ..................................... | 1,000.00 | 2,200.00 |
| 10. | Total gross deposits ..................................... | [2]125,131.28 | 80,862.80 |

[1] On these accounts petitioner was listed as a joint owner.
[2] The parties stipulated to the total gross deposits of $125,131.28; however, the correct addition is $125,481.28.

Some of Dr. Terzian's accounts were joint accounts with petitioner. Petitioner never saw the bankbooks or passbooks for these accounts and, except for a joint checking account on which she occasionally wrote a check, knew of their existence only because Dr. Terzian would bring in a card opening a bank account and tell her to sign it. She never saw the bank statement

on the checking account. Because of signing cards opening the accounts, she was aware during the years here in issue that Dr. Terzian had a number of bank accounts.

On January 30, 1973, shortly before he left for prison, Dr. Terzian granted petitioner a general power of attorney. On June 26, 1974, Dr. Terzian directed petitioner to transfer, pursuant to this general power of attorney, two separate parcels of real estate from Dr. Terzian to their son, James A. Terzian. Petitioner made these transfers at his direction. Subsequently, both of these parcels of real estate were transferred to the Internal Revenue Service to be applied toward Dr. Terzian's taxes.

Petitioner and Dr. Terzian reported adjusted gross income of $21,046.11, $22,944, and $22,215, respectively, on their joint Federal income tax returns for the calendar years 1969, 1970, and 1971. On the return for 1969, interest income of $1,245.43 and dividend income of $60 were reported. On the 1970 return, interest income of $121 and dividend income of $60 were reported, and on the 1971 return, interest income of $93 and dividend income of $70 were reported. For each year, the reported dividend income was after deducting from dividends received, a $200 exclusion. The balance of the reported income was income reported from Dr. Terzian's practice. In none of the years 1969, 1970, and 1971 did the joint returns of petitioner and Dr. Terzian report any interest income from their account at the Bank of Montreal.

In each of the years here in issue, Dr. Terzian either prepared, or had prepared, the joint returns for himself and petitioner. He would take the returns as prepared to petitioner when she was busy at some household chore, such as preparing dinner in the kitchen, and ask her to sign them. Petitioner signed the returns without looking at the figures contained on the returns.

Since Dr. Terzian left her in 1976, petitioner has been living in a small apartment on approximately $15,000 a year. Petitioner has used $20,000 of the $155,000 in the account in the Bank of Montreal for living expenses and in connection with her daughter's education. Otherwise, she has been using the interest on this account for her living expenses.

Petitioner was aware that, during the years she and Dr. Terzian lived together, their cost of living was much greater than the amount she now expends. She estimated that possibly it

was 3 times as much. While petitioner and Dr. Terzian lived well, their standard of living was not extravagant.

Petitioner, approximately 10 years before the date of trial of this case, was given a mink coat by Dr. Terzian as a present and prior to that time had been given a mink stole as a present. During the course of their married life on certain Christmases or birthdays, Dr. Terzian had given her pieces of jewelry which cost approximately $500, but this had happened only on three or four occasions. Petitioner and Dr. Terzian had traveled together some while they were married and had taken several trips abroad.

At the time of the trial of this case, petitioner had not become employed. Her teacher's certificate had expired and she was unable to obtain a position as a teacher. Shortly before the date of the trial of this case, she had taken the examination for real estate agent but had not, at the time of trial, obtained employment as a real estate agent. At the time of the trial, she was living in a two-bedroom apartment with a rental of $275 a month. Her daughter resided in the apartment with her.

## OPINION

Section 6013(e) provides that an innocent "spouse" may be relieved of liability for taxes under certain circumstances.[3] The three conditions which must be met for one spouse to qualify as an innocent spouse are (1) that there is omitted from a joint return filed by the spouses an amount in excess of 25 percent of the gross income shown on the return, which omitted amount is

---

[3]SEC. 6013. JOINT RETURNS OF INCOME BY HUSBAND AND WIFE.

(e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.—

    (1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, if—

        (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

        (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

        (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

    (2) SPECIAL RULES.—For purposes of paragraph (1)—

        (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and

        (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A).

attributable to the other spouse; (2) that the spouse claiming to be an "innocent spouse" when signing the return did not know and had no reason to know of such omission; and (3) taking all of the facts and circumstances into account, including whether or not the spouse claiming to be an innocent spouse significantly benefited from the omitted items of income, it would be inequitable to hold her liable for the tax on the omitted items. *Fox v. Commissioner*, 61 T.C. 704, 716 (1974).

In this case, respondent concedes that an amount in excess of 25 percent was omitted from the income of petitioner and Dr. Terzian as reported on their joint income tax return for each of the years here in issue, and that this omitted income was attributable to Dr. Terzian. It is respondent's position that petitioner has failed to establish that in signing the returns she did not know of and had no reason to know of such omissions and, also, has failed to establish that she did not significantly benefit from the omitted income and that it would be inequitable to hold her liable for the omissions.

The record establishes to our satisfaction that petitioner did not know of the omitted income. We believe her testimony that she did not look at the figures on the returns before she signed them. The question of whether she had reason to know of the omitted income is more difficult. In determining whether an individual reasonably should have known of the omitted income, the standard to be applied is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know of the omission. *Sanders v. United States*, 509 F.2d 162 (5th Cir. 1975). As pointed out in *Mysse v. Commissioner*, 57 T.C. 680, 699 (1972), a spouse cannot close her eyes to unusual or lavish expenditures, or to other facts, that might give her reason to know of the unreported income. In this case, there were no lavish expenditures which would have alerted petitioner to the unreported income.

Petitioner's testimony here, which we accept, is that because of her relationship with her husband and his dominance in all of the family financial matters, she signed the returns without looking at the figures on them. Certainly petitioner cannot be excused for her failure to review a return she signed under penalties of perjury, even though it was her habit all during her married life to sign any document her husband asked her to sign. Petitioner was an educated woman and should have realized her

responsibility for reviewing a return she signed. However, the fact that she signed the return without reading it does not require the conclusion that she had reason to know of the omitted income. The reported income for the years here in issue was sufficient to provide a reasonably comfortable manner of living for a family. This record shows that petitioner and Dr. Terzian and their children did not live in a lavish manner.

Respondent's only argument that she should have known of the omitted income is petitioners speculation made in reply to a question asked her on cross-examination that probably the manner in which the family lived during the years here in issue would have cost close to 3 times the amount it now costs her to live. Petitioner had testified that in 1978 it cost her approximately $15,000 a year for living expenses. During the years 1969 through 1971, living expenses were substantially less than in 1978. The record shows that petitioner knew bank accounts were opened by her husband since some of them were joint accounts and she signed the cards opening the accounts. The record, however, shows that petitioner did not see the statements for these accounts or know the amounts deposited therein. She assumed in many instances when one account was opened it was with funds transferred from another account. The record shows that petitioner rarely wrote a check on the joint checking account she had with Dr. Terzian. The lack of knowledge that petitioner had of the various accounts was such that she reasonably would not have known of the amounts in those accounts or of the interest, if any, paid on such of those accounts as were savings accounts. The total dominance of the family finances by Dr. Terzian is clear throughout the entire record.

The property petitioner transferred to her son at Dr. Terzian's direction under the power of attorney he had given her when he left for prison was transferred after the date of the signing of the 1971 tax return. The record shows that the 1971 joint return was signed by petitioner on March 3, 1972, and the indictment charging Dr. Terzian with income tax evasion was filed on March 28, 1972. After petitioner knew about Dr. Terzian's indictment, she reasonably should have at least investigated to determine if there was omitted income when she signed a return. However, none of the returns for the years here in issue was signed by petitioner after Dr. Terzian's indictment. Weigh-

ing the evidence as a whole, we conclude that petitioner had no reason to know of the omitted income.

The most difficult question to be resolved here is whether petitioner significantly benefited from the omitted income within the meaning of section 6013(e)(1)(C). Clearly petitioner did not significantly benefit through any lavish expenditures made for her benefit or for the benefit of her children. The only significant benefit which petitioner might have obtained was the transfer to her in 1974 of the $155,000 in the Bank of Montreal for her to use for her support. The report of the Senate Finance Committee, S. Rept. 91–1537, 91st Cong., 2d Sess. (1970), 1971–1 C.B. 606, 608, indicates that the term "benefit" as used in section 6013(e) does not include ordinary support of the spouse claiming to be an innocent spouse. However, it does include transfers of property even where the benefit from such transfer is received several years after the year of the omitted income. See also sec. 1.6013–5(b), Income Tax Regs.

Petitioner did not know the source of the funds composing the $155,000 bank account transferred to her. On this record, therefore, we must assume that at least a portion of these funds came from the income omitted from the joint returns of petitioner and Dr. Terzian for the years 1969 through 1971. Therefore, unless the transfer of the $155,000 is viewed as being for petitioner's ordinary support, we would have to conclude that petitioner did significantly benefit from the omitted funds. On the basis of this record, we conclude that the $155,000 was a 1-time transfer to petitioner of an amount in lieu of alimony or support and that these funds would not provide a woman of petitioner's age and lack of business experience with more than ordinary support throughout the remainder of her life. Not only the circumstances of the transfer of the amount to her, but the fact that she did not claim and was not awarded any alimony in the proceeding that she brought against Dr. Terzian for divorce is a clear indication that the funds were a 1-time payment of an amount in lieu of alimony or any other form of support.[4] The $155,000 will provide no more than reasonable support for petitioner if she lives out her life expectancy and may be insufficient to provide such support.

---

[4] Dr. Terzian, in answer to petitioner's complaint for divorce, alleged that he had transferred funds to petitioner for her support.

At the time of the trial, petitioner was 53 years old. She had been separated the second time from Dr. Terzian more than 2 years and was still not gainfully employed. She testified of her efforts to find employment but that she had been unable to do so. While we doubt that petitioner would have been unable to find any type of employment had such employment been an absolute necessity to her existence, we do believe she truthfully testified with respect to her inability to find employment in areas that she considered suitable. As respondent's regulations (sec. 1.6013–5(b), Income Tax Regs.) point out, other factors that may be taken into consideration in determining whether it is inequitable to hold a person liable for the deficiency in tax, where the situation warrants, include the fact that the person seeking relief has been deserted by his spouse or that he has been divorced or separated from such spouse. Here petitioner's major source of support for at least some years to come, and maybe for the remainder of her life, will be the $155,000 or whatever part of it remains and the income therefrom. When this circumstance is considered, along with all the other facts shown in this record, we conclude that it would be inequitable to hold petitioner liable for the deficiency arising from the unreported income. We, therefore, conclude that petitioner has shown that she is entitled to the benefit provided for an innocent spouse by section 6013(e). Since the record is not clear whether any portion of the deficiency is due to any items which would not come within the purview of section 6013(e),

*Decision will be entered under Rule 155.*