ANTHONY GROSS and ANGELA GROSSO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grosso v. Commissioner
Docket No. 8502-75.
United States Tax Court
T.C. Memo 1980-186; 1980 Tax Ct. Memo LEXIS 400; 40 T.C.M. (CCH) 410; T.C.M. (RIA) 80186; May 27, 1980, Filed James E. McLaughlin and Michael D. DeMarco, for the petitioners. Stephen R. Takeuchi, Joseph M. Abele, Joseph T. Chalhoub, and Elizabeth De Priest, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND *401 OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax under sections 6651(a) [1]/ and 6653(a): Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1970
$1,800,673
$ 0
$ 90,034
1971
1,763,440
0
88,172
1972
1,679,468
0
83,973
1973
525,655
51,952
26,283
Due to concessions, the issues remaining for decision are: 1. Whether petitioner Angela Grosso qualifies as an innocent spouse under section 6013(e). 2. Whether petitioner Angela Grosso is liable for additions to tax under section 6653(a) for negligent underpayment of tax. 3. Whether petitioner Angela Grosso is liable for additions to tax under section 6651(a) for failing to file a timely return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Anthony Grosso (hereinafter Anthony) and Angela Grosso (hereinafter petitioner) resided in Pittsburgh, Pennsylvania, at the time they filed their petition. *402 They filed joint Federal income tax returns for 1970 through 1973 with the Director, Internal Revenue Service Center, Philadelphia, Pennsylvania. Anthony and petitioner were married on June 10, 1940. From 1938 through 1974, Anthony was widely reputed to be engaged in the illegal numbers lottery business in Allegheny County, Pennsylvania. During that period, Anthony was arrested or charged with offenses relating to his involvement in the numbers business more than a dozen times. He was convicted at least four times. In January 1968, one of his convictions was overturned by the Supreme Court in Grosso v. United States,390 U.S. 62 (1968). On June 25, 1973, he was convicted and sentenced to prison for a term of 10 years. While in prison in July and August 1973, Anthony made a lengthy statement to agents of the Federal Bureau of Investigation (F.B.I.), detailing the history of his gambling operations and naming numerous individuals who had been associated with him or implicated in the business. Other prosecutions followed, and Anthony testified as a witness at the trials. Anthony also was the subject of numerous newspaper articles reporting on his activity in *403 the illegal numbers lottery. The numbers lottery in which Anthony was involved was a game of chance whereby individuals would choose a three digit number from 000 to 999. One number out of a total of 1,000 was selected on a daily basis as the winning number. The pay-off odds in choosing the winning number varied from 200 to 1 to 700 to 1. [2]/ Anthony's participation in the business was primarily as a banker. He shared the wins and financed the losses of some of his larger operators collecting the wagers. The smaller operators were paid commissions of 20 to 35 percent of the wagers turned in by them. In each of the years 1970, 1971, and 1972, and annual gross volume of wagers in the numbers lottery was $22,500,000. During the period January 1, 1973 through April 30, 1973, the gross volume of wagers was $7,397,259. During the years in question, many of petitioners' relatives were involved in Anthony's illegal numbers business, including Samuel Grosso (Samuel), *404 her brother-in-law, a cousin, three nephews, a brother, and a sister-in-law. Samuel, now deceased, was the bookkeeper for the organization. During part of the time, while Anthony was in prison, Samuel ran the lottery by himself. Petitioner has never been arrested, indicted, or convicted for gambling offenses. She knew nothing of the day-to-day operation or other details of Anthony's business other than that it involved gambling. Becuase Anthony was knowingly engaged in unlawful activities, he told petitioner none of the details of his gambling business. By 1963, Anthony had transferred all property titled in his name to petitioner. Samuel thereafter provided Anthony with any cash he needed. Periodically, upon request, petitioner received cash from Anthony. When Anthony was imprisoned, petitioner secured cash from time to time directly from Samuel. No other funds from the gambling operation were used by petitioner. During the years in question, petitioner was the sole shareholder of Angro, Inc., a real estate investment company, and the West Liberty Car Wash, Inc. In addition, she was a 50-percent shareholder with her brother in the Living Room, Inc., a bar and restaurant. *405 The Living Room employed petitioner as a hostess. She also owned various rental properties. Robert Arnold, a partner in the accounting firm of J.K. Lasser and Company, prepared petitioners' 1970 through 1972 income tax returns. Petitioners' attorney, James E. McLaughlin, signed the returns. James M. Ganley, a certified public accountant, prepared petitioners' 1973 return. On their income tax returns, petitioners listed the following income: [SEE TABLE IN ORIGINAL] The only records made in the gambling business in which Anthony was involved were adding machine tapes which usually were destroyed within a week. No books or other records were kept. The accountants completed the returns using a net worth reconstruction method to compute Anthony's income which was designated on the joint returns as miscellaneous, other, or gambling income. Petitioner supplied most of the information used in the return preparation. This information consisted of bank deposits and total expenditures by petitioners during the year, excluding payments made in the numbers operation. All of the cash received by petitioner from Anthony was accounted for in the returns. Anthony or third parties *406 provided the remaining information needed to complete the returns. Petitioners had used this method of preparing their income tax returns since 1955. On examination of the returns for 1970, 1971, 1972, and 1973, respondent determined deficiencies in the amounts set forth above. OPINION 1. Innocent Spouse Issue
Anthony was convicted of operating an illegal numbers lottery. He has conceded the determined income tax deficiencies based upon unreported gambling income for the years 1970 through 1973. [3]/ Respondent contends that petitioner, who filed joint returns with Anthony for the years in question, is liable for the deficiencies. As a general rule, married taxpayers choosing to reap the benefits of filing joint returns are jointly and severally liable for the tax due on their combined incomes. Sec. 6013(d)(3). An exception is provided, however, by the "innocent spouse" provisions of section 6013(e). [4]/ Under section 6013(e), a taxpayer filing a joint return is relieved of liability for tax attributable to omissions from gross income *407 if (1) an amount in excess of 25 percent of the gross income stated in the return and attributable to the taxpayer's spouse was omitted from the return; (2) the taxpayer did not know and had no reason to know of the omission; and (3) the taxpayer did not significantly benefit from the omitted income so that, considering the facts and circumstances, it would be inequitable to hold the taxpayer liable for the deficiency. *408 Respondent concedes that the first requirement of the innocent spouse exception has been met but contends that the second and third requirements have not been satisfied. Although both Anthony and petitioner testified that petitioner was told nothing of the details of Anthony's business or of the omitted income and had no first-hand knowledge of them, respondent contends that their testimony is not credible. Consequently, respondent concludes, petitioner has failed to prove her lack of knowledge of the omitted income. After careful consideration of that testimony, both when it was given and on examination of the record as a whole, we have concluded that it is credible. It is true that petitioner was aware that her husband was involved in illegal gambling, and she does not contend otherwise. He was arrested on several gambling or lottery operation charges between 1942 and 1971 and had no other income-producing activity sufficient to earn the amount of income reported on the joint returns. His gambling activities, moreover, were highly publicized in the local press. Nevertheless, petitioner's knowledge that Anthony was engaged in gambling does not show that she was involved *409 in that business or knew that his income from that source exceeded the amounts shown on the joint returns. We think it reasonable that Anthony, as he so testified, refused to discuss the details of his illegal activities with petitioner. She did not know the location of the headquarters of his business, the number of his employees, the volume of the business, or any other details. Anthony made a lengthy statement to the F.B.I. while he was in prison in July and August 1973 describing his gambling operation in great detail. Although in that statement he named numerous individuals, including certain members of his family and three public officials to whom bribes were paid, the statement provides no basis for inferring that petitioner knew any of the details or the amount of income derived from the business. A somewhat similar statement given to the F.B.I. in September 1973 by Anthony's brother, Samuel, also provides no inference of such knowledge by petitioner. Anthony also testified at the trials of the public officials who were implicated. Although all of that testimony was not introduced at the trial of the instant case, there is no suggestion in any of the transcripts of testimony *410 introduced that petitioner had any knowledge of the extent of Anthony's business. Indeed, the F.B.I. agent heading the investigation of Anthony's operations and the related cases testified that he obtained no evidence that petitioner was involved. [5]/ Had petitioner been involved in her husband's activities, it seems likely that her involvement would have come to light as a result of this public exposure of Anthony's gambling activities. Respondent argues, however, that petitioner's failure to inquire of Anthony as to the details of the gambling operation invalidates her claim of lack of knowledge, citing Adams v. Commissioner,60 T.C. 300 (1973), *411 and Sanders v. United States,509 F.2d 162 (5th Cir. 1975). This is not the case, however, of a taxpayer who has intentionally ignored the financial records of a business or the business activities of her spouse. Cf. Adams v. Commissioner,supra at 303. Here no records existed for petitioner to investigate with regard to the omitted income.Moreover, Anthony deliberately avoided giving petitioner the details of his business. He knew his gambling activities were illegal and he did not want to expose her or himself to the danger of informing her of the details. [6]/ Further, petitioner attempted to report the correct income by furnishing all information at her disposal to the family accountant. Thus, petitioer's failure to actively pursue knowledge of Anthony's gambling activities does not disqualify her as an innocent spouse. See Sanders v. United States,supra.
*412 Respondent alternatively argues that petitioner had reason to know of the omitted income. Respondent points out that section 6013(e) refers to the omission of gross income. He contends that petitioner, as an experienced businesswoman, hould have realized that deriving Anthony's income by the cash expenditures method for purposes of the income tax returns results in net income rather than gross income because business expenses and cash reserves were substracted from gross receipts. Additionally, respondent observes that Anthony was the subject of numerous newspaper articles estimating his annual gross income at extremely high figures, and that petitioner admits being aware of these reports in the news media. Respondent further observes that petitioner knew that several of her relatives were involved in the numbers operation and thus was cognizant of the operation's magnitude. Accordingly, respondent concludes that petitioner should have known that Anthony's gross income was greater than the amount reported in the return. The standard to apply in determining whether petitioner had reason to know of the omitted income is whether a reasonable person in her subjective position would *413 have known. Sanders v. United States,509 F.2d at 166-167; Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). Petitioner's testimony showed that she knew none of the details of Anthony's business, including whether a partnership or joint venture existed with each of the large operators who collected wagers. The record shows that Anthony's brother, Samuel, was heavily involved in the business and operated it after Anthony was arrested. Thus, it is not at all clear whether Samuel was a partner. Consequently, without deciding whether the operation qualified as a partnership or a series of joint ventures, it would be unreasonable to expect petitioner to know whether the income reported for Anthony constituted his net income from a sole proprietorship rather than his share of partnership net income, or the relationship of the gambling operation's gross income to the gross income of others. Although Anthony was the subject of numerous newspaper articles, many of which we have carefully examined, they are insufficient to have alerted petitioner to the omitted income. Some of those articles refer to the gross volume of wagers reportedly made in the gambling *414 operation. Figures quoted in the press can be greatly exaggerated, speculative, or misleading, and can be misunderstood.The articles contain none of the details of how the gambling income was shared among the various individuals, including Anthony's relatives, involved in the operations. At most, these newspaper reports only indicated the likelihood that Anthony had substantial income. The joint income tax returns showed income derived from Anthony's gambling operations in the amounts of $115,874 in 1970, $70,709 in 1971, $74,154 in 1972, and $90,459 in 1973. Clearly these are substantial amounts. Therefore, the newspaper reports were insufficient to put petitioner on notice of omitted income. Indeed, we think it reasonable to conclude that petitioner, knowing that Anthony was living under the constant scrutiny of the press and Federal investigators, including the Internal Revenue Service, honestly believed that the gambling income which he included in the returns was his full share of the earnings. In addition, other income reported in the returns for those years ranged from $25,000 to $38,000 per year. The evidence does not show any net worth increase, property acquisitions, *415 unusual expenditures, or a life style inconsistent with these income levels reported in the income tax returns.Thus, this is not the case where lavish expenditures compared to reported income are such as to put the spouse on notice of omitted income. Cf. Terzian v. Commissioner,supra;Mysse v. Commissioner,57 T.C. 680, 699 (1972). Furthermore, merely because many of petitioner's relatives were involved in Anthony's business does not convince us that petitioner should have known that Anthony's income was larger than that reported. Accordingly, we conclude that petitioner had no reason to know of Anthony's unreported income. Respondent also argues that petitioner fails the third requirement under section 6013(e). Respondent maintains that she benefited from the omitted income and that it is not inequitable to hold her liable for the deficiencies. Respondent contends that petitioner indirectly benefited from the omitted income because it was used to maintain Anthony's wagering business, which, as an income-producing mechanism, conferred substantial benefits upon petitioner. Moreover, respondent argues that the omitted income exists as a hidden *416 cash hoard which in the future may be transferred to directly benefit petitioner. Noting that all of petitioners' property is titled in petitioner's name, respondent concludes that it would not be inequitable to hold petitioner liable for the deficiencies. We disagree. To the extent that petitioner benefited from Anthony's numbers business, she reported it as income. Any other indirect benefits conferred upon petitioner by the omitted gross income due to its maintaining Anthony's business is tenuous and clearly not significant as required by the statute. Sec. 6013(e(1)(C). It is true, as respondent suggests, that the existence of a cash hoard consisting of the omitted income could be transferred in the future to petitioner so as to significantly benefit her. Sec. 1.6013-5(b), Income Tax Regs. But the possible existence of a cash hoard is pure speculation. There is not a scintilla of evidence indicating the existence or amount of such a hoard.Respondent concedes that Anthony has no assets. Indeed, when Anthony needed cash after 1963, when he transferred his assets, he would request it from Samuel. He did not draw upon some secret reserve comprised of his unreported income. *417 Thus, on the record before us, we are not convinced that such a hoard does exist. Merely becuase petitioner has substantial assets titled in her name does not persuade us that it would not be inequitable to hold her liable for the deficiencies. The evidence indicates that the assets titled in petitioner's name were acquired by accounted-for funds, bequests, or gifts from Anthony prior to 1964. For many years she has operated legitimate businesses of her own which were not connected with Anthony's gambling activities. None of the assets which she owns were acquired by the use of the unreported income. Because petitioner made a good faith effort to accurately report Anthony's income, and because she received no significant benefit from the omitted income, we find that to enforce the deficiencies against petitioner would be harsh and thus inequitable. 2. Negligence Penalty Issue
Respondent has determined a negligence penalty under section 6653(a) due to the failure to report Anthony's entire income.Section 6013(e), however, provides that an innocent spouse-- shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year *418 to the extent that such liability is attributable to such omission from gross income. Because we have found that petitioner is an innocent spouse, she is also relieved of liability for the negligence penalty. 3. Untimely Return Penalty Issue
Respondent has determined a penalty under section 6651(a) [7]/ for the untimely filing of petitioners' 1973 income tax return. Petitioners originally filed for an automatic 2-month deadline extension. Subsequently, they applied for, but did not receive, a 6-month extension to October 15, 1974. Nevertheless, the return was not filed until October 17, 1974. *419 Petitioner has failed to introduce any evidence as to why the return was filed late. Instead, she chose to rely upon the innocent spouse provision to escape liability for the late return penalty. That provision, however, does not excuse petitioner from liability because the penalty is added "to the amount required to be shown as tax" on the return, not merely on the amount of the deficiency. Consequently, under section 6013(d)(3), [8]/ petitioner is jointly and severally liable for the section 6651(a) penalty. [9]
To reflect the foregoing, Decision will be entered under Rule 155. *420 Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
2. /↩ One number frequently played and for which the odds were lower, for example, was 057. Heinz Pickle Company had a factory in the City, and maintained a billboard advertising its famous 57 varieties.
3. /↩ Anthony apparently has large unpaid excise tax and other deficiencies far in excess of the value of his assets.
4. / Sec. 6013(e) provides in pertinent part: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.↩
5. / The F.B.I. agent testified that he found no evidence that petitioner was "directly" involved in her husband's business and added: THE COURT: Would you explain the use of the word directly? THE WITNESS: Yes, sir. That is involved in the day to day operaion of the business, receiving profits from it, or working in it. THE COURT: Did you have any evidence that she was involved in any way? THE WITNESS: No, sir, except just in the background, as a wife who, in our opinion, had some knowledge ot it, would have to have, and--as any wife would.↩
6. / Anthony testified in part: Q. Is there any reason why you didn't discuss the details of these matters with your wife? A. Well, you see, under the Italian custom, we have a way of not telling our wives anything. We don't want to hurt them, we don't want to cheapen them. * * *↩
7. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (A) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;↩
8. / SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (d) Definitions.--For purposes of this section-- (3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. ↩
9. Although petitioners were granted an extension of time only to June 15, 1974, within which to file their 1970 return and the return was not filed until Oct. 17, 1974, the sec. 6651(a) addition to tax, as stated above, was computed at $51,952. The computation is based on a delinquency of 2 months.↩