BETTY SMITH AND ESTATE OF BART SMITH, DECEASED, BETTY SMITH, ADMINISTRATRIX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 1074-86.
United States Tax Court
T.C. Memo 1987-226; 1987 Tax Ct. Memo LEXIS 228; 53 T.C.M. (CCH) 743; T.C.M. (RIA) 87226; May 4, 1987. David J. Simmons, for the petitioners. Susan M. Gray, for the respondent. PATE
MEMORANDUM FINDINGS OF FACT AND OPINION PATE, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) (redesignated as sec. 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1556, 100 Stat. 2755) and Rules 180, 181 and 182. [1]
Respondent determined the following deficiencies in and additions to petitioners' Federal income and self-employment taxes: 1981
1983
Deficiencies
$3,401.99
$566.86
Additions to Tax
sec. 6653(a)(1)
170.10
28.34
sec. 6653(a)(2)
* **
After concessions by both *230 parties, the sole issue for our decision is whether Betty Smith is entitled to relief from liability for 1981 as an "innocent spouse." FINDINGS OF FACT Betty Smith (hereinafter "petitioner") and Bart Smith (hereinafter "Bart") were married and resided in Canton, Ohio at the time the petition in this case was filed. Some of the facts in this case have been stipulated and are so found. During 1981 and 1983, Bart was employed as a truck driver by Denver L. Belknap, a trucking company (hereinafter "Belknap"). During 1981, he received compensation totaling $19,122 from Belknap, $5,612 of which was reported on Form W-2 and $13,510 of which was reported on Form 1099. On his 1981 income tax return, Bart reported the entire amount stated on Form W-2 as wages, but omitted the amount stated on Form 1099 from his gross income. In 1983, Belknap reported Bart's entire compensation of $7,290.93 on Form 1099, all of which Bart reported on his income tax return. On the notice of deficiency, respondent determined that the unreported Form 1099 income was includable in petitioners' gross income for 1981. In addition, for both years, he determined that petitioners were liable for self-employment *231 taxes as well as additions to tax under section 6653. In the original petition, petitioners claimed that the omitted income was "received as reimbursement for on-the-road expenses and not as compensation." [2] Bart died before this case was tried, and thereafter, petitioner conceded the unreported income and the addition to tax for 1981. Respondent conceded the self-employment taxes for both years and the addition to tax for 1983. [3] Petitioner now maintains that she should be relieved of the resulting liability because she qualifies as an innocent spouse under section 6013(e). Petitioner's background is relevant to our determination. She grew up in a small town and what little education she had was received in a one room school house, from which she did not graduate. She has never held a job. She has a mentally disabled daughter by a previous marriage. [4] Her first husband committed suicide. Petitioner *232 then married Bart and had a son who was five years old at the time of trial. Petitioner suffers from a heart ailment which required her to undergo open heart surgery in both 1969 and 1983. Her condition was disabling during 1981 and she still regularly sees a heart specialist. As of the date of trial, petitioner owed approximately $14,000 for medical services. Bart never discussed the amount of his compensation with petitioner. In 1981, he received approximately 72 checks from Belknap ranging from $25 to $535, some of which petitioner believed were advances. Pursuant to her husband's instructions, petitioner cashed 47 of these checks, totaling $10,918, returning all of the cash to her husband. Periodically, petitioner sorted out the household bills and presented them to Bart. He chose the ones to be paid and gave her the appropriate amount of cash with which she purchased money orders to pay the bills. These bills totaled approximately $500 per month. Bart had their joint income tax return for 1981 prepared by a tax service. Petitioner was not privy to the Forms W-2 or Forms 1099 and was required *233 to sign the return without review. Petitioner and Bart lived very modestly during 1981. They occupied a small house which petitioner had acquired prior to marrying Bart. She paid the $88 monthly mortgage payment on this home out of her daughter's social security checks. During the years in issue, petitioners did not take any trips, did not purchase a new car, and did not fix up their home. On February 6, 1986, Bart was accidentally killed while working under a truck which slipped into reverse gear crushing his chest. His total estate was valued at approximately $5,000. His funeral costs were $5,969 of which his brothers paid $1,405. Petitioner was liable for the balance. OPINION The question we must decide is whether petitioner is liable for the tax on the income omitted from the 1981 joint income tax return she filed with her husband. In general, when a husband and wife file a joint return they are jointly and severally liable for the amount of tax due. Sec. 6013(d)(3). However, an "innocent spouse" is relieved from liability resulting from a substantial understatement of tax if she meets all of the following requirements: (1) a joint return was filed; (2) there is *234 a substantial understatement of tax attributable to grossly erroneous items of the other spouse on such return; (3) in signing the return the spouse did not know, and had no reason to know, that there was such substantial understatement; and (4) taking into account all of the facts and circumstances, it is inequitable to hold the spouse liable for the deficiency for such taxable year attributable to such understatement. Sec. 6013(e)(1). [5] The liability for tax from which the innocent spouse is relieved includes "interest, penalties, and other amounts." Sec. 6013(e)(1). Respondent concedes that petitioner satisfies the first and second requirements set forth above and that the grossly erroneous items creating the deficiency are attributable solely to Bart. However, respondent maintains that petitioner does not satisfy the third and fourth requirements. Petitioner *235 has the burden of proving that she meets these requirements. Lessinger v. Commissioner,85 T.C. 824, 838 (1985); Sonnenborn v. Commissioner,57 T.C. 373, 381-383 (1971); Rule 142. To meet the third requirement, petitioner must show both: that she did not have actual knowledge of the omission; and that she did not have reason to know of the omission. Sec. 6013(e)(1)(C); Estate of Jackson v. Commissioner,72 T.C. 356, 360-361 (1979). In our determination, we have given due consideration to the remedial nature of section 6013(e). Congress intended the innocent spouse exception to remedy perceived injustices, and we will not hinder that intent by an unduly narrow or restrictive reading. Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975). After considering the evidence, we think it is clear that petitioner had no actual knowledge of the understatement of tax. Bart never discussed his compensation with petitioner and when he filed the petition he took the position that the amounts reported on the Form 1099 were justifiably omitted because they constituted reimbursements of expenses. He controlled preparation *236 of the income tax return and did not allow petitioner to review the figures on the return or the forms which he received from Belknap. Therefore, she could not have known of the omission when the return was filed. However, whether petitioner had reason to know of the understatement of tax is a more difficult question to decide. The primary ingredients of the "reason to know test" are: the circumstances which face the petitioner; and whether a reasonable person in the same position would infer that omissions had been made. Shea v. Commissioner,780 F.2d 561, 565-566 (6th Cir. 1986), affg. in part and revg. in part on another issue a Memorandum Opinion of this Court. In applying this standard, "the state of the spouse's cognitive faculties becomes a permissible inquiry." Sanders v. United States,supra at 169. Three factors have repeatedly appeared and been held significant in determining whether a spouse had reason to know of an understatement of tax: (1) participation in business affairs or bookkeeping by the alleged innocent spouse, Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975); *237 (2) the guilty spouse's refusal to be forthright concerning the couple's income, Adams v. Commissioner,60 T.C. 300 (1973); and (3) the presence of unusual or lavish expenditures, Mysse v. Commissioner,57 T.C. 680, 699 (1972). Respondent primarily argues that petitioner should have known of the understatement because she cashed so many of Bart's checks and they totaled substantially more than the reported income. However, although petitioner cashed approximately 50 checks, the wide spectrum of amounts made it difficult for petitioner to estimate Bart's annual income therefrom. Without a bank account, petitioner had no record of his checks to which she could refer. Nor does it appear that petitioner kept any independent record of the checks she cashed. Further, as the spouse in charge of the family's finances, Bart decided which bills would be paid, in what amount, and in what order. Although petitioner sorted through the bills and obtained money orders to pay them, these services were merely perfunctory and performed pursuant to her husband's direction. Most importantly, petitioner would not have thought to compare her total household expenses *238 with the total income reported on the return even if she had that information. Petitioner has little aptitude for financial matters, which we attribute, at least in part, to her lack of education and her never having held a job. At trial, her answers to even counsel's simplest financial questions indicate that she did not fully understand what had transpired. For instance, when questioned regarding the disposition of the assets in Bart's estate, petitioner admitted that she required the assistance of Bart's former boss to liquidate his assets. Further, petitioner incurred a funeral bill exceeding the total value of Bart's estate, despite her otherwise precarious financial condition. Taking all of this into account, we conclude that petitioner did not comprehend the significance of these affairs. Cf. Mysse v. Commissioner,supra at 699. Consequently, we are not prepared to find that under petitioner's circumstances the mere cashing of Bart's checks and obtaining money orders gave petitioner reason to know that income was not properly reflected on the joint income tax return. Ballard v. Commissioner,740 F.2d 659, 664 (8th Cir. 1984). See *239 Sanders v. United States,supra;Purcell v. Commissioner,86 T.C. 228 (1986). Secondly, this is not a case where the "guilty" spouse's refusal to be forthright about the couple's income should have put the "innocent" spouse on notice. Cf. Adams v. Commissioner,supra at 303. Petitioner trusted Bart to take care of the finances. Since it was not customary for Bart to discuss financial matters with petitioner, she had no reason to believe he was concealing anything from her. Moreover, petitioner was not sufficiently sophisticated to question her husband, and therefore, Bart had no reason to be either evasive or uncooperative. [6]
Finally, petitioner enjoyed no unusual or lavish expenditures from the income. The family maintained a very modest standard of living. They purchased none of the basic badges of prosperity (new cars, trips, household improvements), nor increased their ordinary expenditures. [7] Consequently, we hold that petitioner has met her burden of proving that she neither *240 knew nor had reason to know of the understatement of income on the 1981 return.
Turning to the fourth requirement, we must determine whether, taking into account all the facts and circumstances, it is inequitable to hold petitioner liable for the deficiency. Sec. 6013(e)(1)(D). In making this determination, we consider whether the spouse seeking relief significantly benefited from the understatement. [8] Again, normal support is not considered. See sec. 1.6013-5(b), Income Tax Regs.[9] See Purcell v. Commissioner,supra at 242; Terzian v. Commissioner,72 T.C. 1164, 1172 (1979). *241 As we stated above, petitioner received no benefit from the unreported income. Even the normal family support remained the same. Moreover, petitioner received very little, if anything, from Bart's estate. Mysse v. Commissioner,supra at 699. In fact, she was left with substantial debts for medical costs and Bart's funeral expenses. Finally, petitioner, whose health is very poor and whose education, skills, and station in life are below average, must now care for both her disabled daughter and young son without the aid of a spouse. [10] Under these circumstances, we conclude that it would be inequitable to hold petitioner liable for the tax attributable to the income omitted by her husband. Consequently, we hold that petitioner is entitled to the relief provided in section 6013(e). Decision will be entered *242 under Rule 155.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
*. Fifty percent of the interest due on the underpayment of $3,401.99. ** Fifty percent of the interest due on the underpayment of $566.86.↩
2. Petitioners also contested all of the other adjustments. ↩
3. Since the imposition of self-employment taxes was the only adjustment to 1983, respondent's concession of the self employment tax issue eliminated the section 6653 addition to tax with regard to that year.↩
4. Petitioner's daughter receives social security due to her disability.↩
5. Sec. 6013(e) was amended by the Tax Reform Act of 1984 with retroactive application to all open taxable years to which the Internal Revenue Codes of 1954 and 1939 apply. See Pub. L. 98-369, sec. 424, 98 Stat. 494, 801-802 (1984-3 C.B. (Vol. 1) 309-310); H. Rept. 98-432, (Part 2) 1501, 1503 (Mar. 5, 1984).↩
6. See Cox v. Commissioner,T.C. Memo. 1982-723; Hackney v. Commissioner,T.C. Memo. 1976-99↩.
7. Generally, the use of unreported income for "ordinary support" does not give the spouse reason to know of the income's existence within the meaning of the statute. Mysse v. Commissioner,57 T.C. 680, 699↩ (1972).
8. Sec. 6013(e)(1)(C), prior to its amendment, explicitly required that we consider "whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income." While sec. 6013(e), as amended, no longer specifically requires that we make such a determination, this factor is still to be taken into account. See H. Rept. 98-432, (Pt. 2) supra at 1502; Purcell v. Commissioner,86 T.C. 228, 242 (1986); DeMartino v. Commissioner,T.C. Memo. 1986-263↩. 9. These regulations were promulgated prior to July 18, 1984, the effective date of present sec. 6013(e), which no longer includes a specific reference to a significant benefits test. But see Purcell v. Commissioner,supra↩ at 242.
10. Sec. 1.6013-5(b), Income Tax Regs. provides that divorce, separation or desertion may be taken into account in our determination. Bart's accidental death has had an even greater impact on petitioner's deteriorating financial position than those factors normally would have. See Terzian v. Commissioner,72 T.C. 1164, 1172↩ (1979).