EDWARD SHAPIRO AND SANDRA SHAPIRO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shapiro v. Commissioner
Docket No. 17794-81.
United States Tax Court
T.C. Memo 1988-350; 1988 Tax Ct. Memo LEXIS 373; 55 T.C.M. (CCH) 1472; T.C.M. (RIA) 88350; August 4, 1988. Laurence B. Labovitz,Leslie S. Klinger,Jordan P. Weiss,Bruce I. Hochman and Martin N. Gelfand, for the petitioners. Steven M. Roth,Ralph A. Eppensteiner and Bernard Goldstein, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge:  Respondent determined a deficiency in petitioners' 1977 Federal income tax in the amount of $ 96,490. Petitioners concede the deficiency determination. The sole issue to decide is whether Sandra Shapiro is an "innocent spouse" within the meaning of 6013(e). [1]
*374 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Sandra Shapiro ("petitioner") resided in Northridge, California at the time the petition in this case was filed. She was married in 1977 to her former husband, Edward Shapiro ("Shapiro"), and they filed a joint tax return for that year. Petitioner and Shapiro were married on January 21, 1961, separated on or about May 16, 1977, signed a Marital Settlement Agreement on May 9, 1978, and divorced shortly thereafter. Petitioner married Mr. Glantz, her current husband, in September 1978. The deficiency herein results from respondent's disallowance of a $ 172,000 deduction taken on their 1977 tax return, derived from a tax shelter investment in the Fenix Cattle Company. Petitioner was separated from Shapiro at the time he entered into this investment in December 1977. Petitioner had no knowledge of this investment from Shapiro and learned of it only a short time before trial. Petitioner was a full-time housewife and mother during her marriage to Shapiro and did not substantially participate in the financial affairs *375 of the family. She is a high school graduate with no business education and was dependent upon Shapiro for support. Shapiro earned a living from his stereo business, and reported over $ 170,000 in income on his 1977 tax return. Throughout their marriage, petitioner and Shapiro enjoyed a "nice" life style and lived in a "comfortable" four bedroom home, but did not live extravagantly for people of their means, other than owning a Lincoln Continental and Rolls-Royce. Their life style remained relatively unchanged in 1977. Shapiro is also a high school graduate with some electronic training. He has been self-employed most of his life and in 1977, he was Vice President and a stockholder in San Car Enterprises, a retail consumer electronics company. Petitioner was not involved in the day-to-day operations of her husband's business, except to the extent she knew that "he owned a stereo business, and he had "x" amount of stores and they sold stereos and auto equipment."  She was not aware of her husband's income because there was no weekly, biweekly or monthly pay check; rather, Shapiro drew funds for what he needed, when he needed it. Petitioner did not involve herself in her husband's *376 business activities, nor did Shapiro discuss them with her. Shapiro had a separate business account. The Shapiros had a joint personal checking account which paid for their normal living expenses, such as the mortgage, credit cards and utility bills. Major purchasing decisions for automobiles or appliances were jointly made. Petitioner wrote some of the checks on this account for various household expenses. Shapiro would, as necessary, deposit funds into the personal checking account to cover the bills. Petitioner knew Shapiro had life insurance policies, certain real estate investments and other checking accounts, including other joint accounts for which she had signed the signature cards but had made no deposits or withdrawals thereon. Most notably this would include a Manufacturer's Bank account of $ 325,000. Petitioner knew they had such a joint account, but never knew the account balance or the activity on the account. Her knowledge, moreover, was of a general nature and she possessed very limited information on these investments. Thus, while petitioner "recognized" the names of the real estate investments listed on the 1977 return, she never visited the properties *377 and knew nothing more about the investments. Petitioner had no experience in reviewing tax returns. Prior to her marriage, her father, an accountant, prepared her tax returns and she would sign the return without reading it. Shapiro employed an accountant to prepare his and petitioner's 1977 and prior returns. Petitioner trusted the accountant and never reviewed or discussed the details of the returns with him. She did not read the 1977 tax return or the jurat before signing. Petitioner did not recall reviewing the financial figures on the 1977 tax return or, in particular, the presence of the $ 172,000 loss on the Schedule F, Farm Income and Expenses. Neither Shapiro nor petitioner received a refund for taxable year 1977, although according to their marital agreement, Shapiro would have been entitled to it, if one existed. Petitioner and Shapiro entered into a Marital Settlement Agreement in May 1978. Pursuant to that agreement, petitioner received property valued at over $ 375,000, in addition to the house, Lincoln Continental, furniture and furnishings, art objects, jewelry and clothing. Petitioner was represented by her attorney during the signing of the agreement, *378 who explained to her its content, page by page. The Fenix Cattle Company investment was not among the assets or liabilities listed in the agreement. As part of the agreement, petitioner joined in filing a joint 1977 tax return with the understanding that Shapiro pay all taxes and receive any refund as his sole and separate property. OPINION The sole issue for decision is whether petitioner qualifies for relief from liability for the deficiency in tax under the innocent spouse provisions of section 6013(e). Petitioner bears the burden of proving that she is entitled to relief under the innocent spouse provision. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a); Lessinger v. Commissioner,85 T.C. 824, 838 (1985); Sonnenborn v. Commissioner,57 T.C. 373, 381-383 (1971). Section 6013(3) provides: (e)  SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1)  IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) *379 a joint return has been made under this section for a taxable year, (B)  on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C)  the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D)  taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relived of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
The parties agree that a joint return was filed by petitioner and ex-husband, Shapiro, for the 1977 tax year, and that the return contained a substantial understatement of tax. We therefore turn to the issue of whether petitioner knew or had reason to know of the substantial understatement of tax. Based on a review off all the evidence, we do not believe petitioner had actual knowledge of the understatement *380 of tax on the return. We must, therefore, only determine whether she had "reason to know" of the substantial understatements. The standard for determining whether an innocent spouse claimant has reason to know of an understatement of tax is phrased in terms of what a "reasonable person" would infer under the same circumstances. See Shea v. Commissioner,780 F.2d 561, 566 (6th Cir. 1986), affg. a Memorandum Opinion of this Court; Sanders v. United States,509 F.2d 162, 167 (5th Cir. 1975); Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). Respondent argues that even if petitioner had no actual knowledge of the tax shelter investment, she should have been alerted to the possibility of wrongdoing by her ex-husband. Respondent contends that there is ample evidence in the record that indicates petitioner's knowledge of her husband's investment and business dealings. Specifically, respondent points to petitioner's awareness of at least two of her husband's real estate investments, the fact that she had joint accounts with her husband in *381 several banks and knew of the existence of these accounts, the fact that from time to time she helped pay the bills from monies in the joint checking account, and the fact that she benefited from the substantial understatement. Respondent then argues that based on all the surrounding facts and petitioner's business background, petitioner should have been expected to make relevant inquiries about the loss on the return. Respondent contends that the 1977 return reported over $ 172,000 in income, but that the Shapiros paid no tax, and that even a person with petitioner's limited business experience would have known that something extraordinary must account for the fact that no tax was due on that much income. Moreover, he points to a "refund of $ 8,994," which only highlights this conclusion. In essence, respondent argues, that when shown a tax return calling for a refund on that much income, a reasonable person would make an inquiry about a loss of $ 172,000. We disagree with respondent. While petitioner did pay family bills, discuss major family purchases with her ex-husband, know generally of several of his business investments and was aware of their joint accounts, it does *382 not follow that she had reason to know of Shapiro's investment in Fenix Cattle, which was consummated on or about December 30, 1977. Petitioner was separated from Shapiro at that time, and Shapiro testified that he never told petitioner about this investment. Moreover, respondent is wrong in arguing that petitioner should have been alerted to the tax shelter loss by reason of the "refund" on their 1977 tax return even if not alerted by Shapiro. A review of the return indicates that there was no refund in 1977 an the $ 8,994 was in fact a balance due. If someone as sophisticated as respondent is confused about the difference between a tax balance due and a refund on the 1977 tax return, petitioner, a housewife, could hardly be put on notice of an understatement by reason of a nonexistent refund. Another relevant fact in determining the issue of whether a party has "reason to know" about a particular transaction is whether any unusual or lavish expenditures were made during the tax year that would alert a reasonable person in petitioner's position that something was amiss. See Mysse v. Commissioner,57 T.C. 680, 699 (1972). *383 Petitioner and Shapiro enjoyed a comfortable standard of living throughout their marriage. They lived in a four bedroom home in a nice neighborhood, liked expensive cars, and, generally, lived in a manner consistent with Shapiro's substantial earnings. Although petitioner was unaware of his exact income throughout their marriage, she knew that it was adequate to finance the purchase of a nice home and expensive cars. Petitioner received no unusual or lavish gifts in 1977. In these circumstances, neither the standard of living they enjoyed nor the purchase of expensive cars could be considered a lavish expenditure that would alert a reasonable person in petitioner's position to an understatement of tax. Respondent argues, nevertheless, that petitioner substantially benefitted from the understatement because she received the benefit of one-half of the understatement. One month after the 1977 return was filed, in May 1978 when the Marital Settlement Agreement was signed, the tax benefit remained as community property. Respondent also contends that even if petitioner did not benefit by the receipt of lavish gifts or life style, she did not suffer either as a result of her marital *384 agreement. The regulations provide that for purposes of the innocent spouse rules, normal support does not constitute a benefit. See section 1.6013-5(b), Income Tax Regs.; Terzian v. Commissioner,72 T.C. at 1172. Normal support is measured by the circumstances of the parties. See Sanders v. United States,509 F.2d at 168. The record indicates that petitioner received nothing other than normal support either in the natural course of her life or as a result of her Marital Settlement Agreement. Respondent's attempt to infer a benefit on petitioner by reason of the fact that petitioner was not displaced from her four bedroom suburban home after her divorce clearly is not the type of benefit contemplated by these provisions. We find that taking into account all the facts and circumstances it would be inequitable to hold petitioner liable for the 1977 deficiency in tax attributable to the Fenix Cattle Company investment. Petitioner is an innocent spouse within the meaning of section 6013(e). Decision will be entered *385 for petitioner Sandra Shapiro and for respondent as to petitioner Edward Shapiro.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩