MARLENE I. SHAPIRO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shapiro v. Commissioner
Docket No. 18589-84.
United States Tax Court
T.C. Memo 1986-142; 1986 Tax Ct. Memo LEXIS 465; 51 T.C.M. (CCH) 818; T.C.M. (RIA) 86142; April 14, 1986. David N. Kuryk, for the petitioner. Clare J. Brooks, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency of income tax in the amount of $21,339.66 against petitioner and her former husband, Sanford R. Shapiro, for the *466 calendar year 1977. After concessions, the only issue remaining is whether petitioner qualifies for relief under section 6013(e), Internal Revenue Code of 1954. [1]
Some of the facts herein were stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. FINDINGS OF FACT Petitioner was a resident of Baltimore, Maryland, at the time the petition herein was filed. She was born in 1945, and graduated from Goucher College in Baltimore, Maryland, with a Bachelor's Degree in French in 1966. She worked in various positions, including as a teacher of French, until her marriage to Sanford R. Shapiro (hereinafter "Sanford") in 1969, and continued in various other employments until the year 1972, when she *467 ceased working to become a mother and homemaker. She had two children, one born in 1972 and another in 1975.From the time petitioner stopped working in 1972 until 1983, petitioner was not employed. At the time of her marriage to Sanford in 1969, the latter was serving in the United States Air Force. Upon his discharge in 1971, Sanford worked for a time with an accounting firm in the Baltimore City area, and then opened his own office for the practice of accountancy in Baltimore County, Maryland, in 1973. In the early years of their marriage, from 1969 until 1972, petitioner and Sanford lived on the earnings produced by each of them. From 1973 onwards, Sanford provided the sole support of the family. Beginning at some point after the time he opened his own office in 1973, and continuing through the year at issue herein, Sanford organized, and apparently controlled and operated several different corporations. The names of these organizations were: Financial Systems, Ltd.; Tax Masters Limited; Shelleydale Enterprises; Organization Unlimited, Inc.; Harris-Scott, Inc.; and SRS Limited. Sanford operated such organizations at least through the year 1980, and, at various times during *468 this period, petitioner was a corporate officer in Organization Unlimited, Inc., Financial Systems, Ltd., Harris-Scott, Inc., Tax Masters Limited, and SRS Limited. At various times, petitioner also had check signing authority for Harris-Scott, Inc., Organization Unlimited, Inc. and SRS Limited with respect to bank accounts maintained by those organizations. She was also involved in the purchase of certificates of deposit purchased by Harris-Scott, Inc. and Organization Unlimited, Inc. In addition to signing corporate documents for one or more of the above organizations in the period between 1973 and 1980, petitioner also signed U.S. Corporate Income Tax Returns for Financial Systems, Ltd. for its fiscal years ending September 30, 1978 and September 30, 1979. She also signed U.S. Corporate Income Tax Returns for Harris-Scott, Inc. for its fiscal years ending September 30, 1978 and 1979. Aside from signing corporate documents and returns for one or more of Sanford's organizations, as described, petitioner performed no services for any of Sanford's businesses and took no part in management. Nor did she investigate or make any inquiry concerning the income or other business affairs *469 of the various companies in which she held positions. In 1976, petitioner resigned her corporate position with Organization Unlimited, Inc. and transferred her stock in that organization to her minor children. For the calendar quarter ending October 1, 1976, she filed a U.S. Quarterly Gift Tax Return with respect to such gift. After Sanford established his own business in about 1973, and at least until the spouses separated in 1981, petitioner and her family lived in the Baltimore area as a middle class or upper middle class family. Although their lifestyle was not extravagant or lavish, it was comfortable. Sanford gave petitioner presents on the occasions of her birthdays and their anniversaries, typically in jewelry, each in the range of value of $200 to $800. In addition, Sanford and petitioner took trips in 1973, 1977 and 1978, to England, France and Italy, respectively. In the years 1975, 1976 and 1977, petitioner, Sanford and their children vacationed at Sea Colony, Bethany Beach, Delaware, for several weeks on each occasion. Sanford and petitioner also vacationed in Las Vegas in 1976 and 1977. Petitioner paid for the 1976 trip to Las Vegas with checks drawn on Organization *470 Unlimited, Inc. Throughout the period 1971 through 1977, petitioner and Sanford filed joint Federal income tax returns. With respect to their joint returns, as well as with respect to the various corporate documents and tax returns which petitioner signed as an officer of one or more of Sanford's organizations described above, petitioner made no inquiry as to the contents of the returns or the nature of the documents which she was signing. In some cases, the documents were presented to her for signature in blank or in incomplete form. A joint checking account was maintained by Sanford and petitioner, with funds provided by Sanford. Petitioner drew checks on such account from time to time for the payment of household expenses, including clothing, food and incidental expenses for the support of herself and the children. She was also provided by Sanford with credit cards, which she used for the same purposes. Petitioner had no funds of her own, and all moneys were provided by Sanford. Petitioner and Sanford separated in 1981, and were thereafter divorced. After the separation, Sanford ceased supporting petitioner and his children in any meaningful fashion. Petitioner had to *471 go back to work, and, beginning about 1983, has continued to support herself and her children with help from her family. The home where Sanford and petitioner lived, previously transferred to one of Sanford's coirporations at his insistence, was auctioned off to meet his debts, and there was no remaining equity received by petitioner. In 1982, Sanford was indicated for violating section 7206(1) with respect to the corporate income tax returns for Organization Unlimited, Inc. for its fiscal year 1976; the corporate return for SRS, Ltd. for its fiscal year 1977; and the joint individual income tax returns of petitioner and Sanford for the calendar years 1975, 1976 and 1977. After trial, Sanford was convicted on all counts in 1983, and the conviction was upheld by the Court of Appeals for the Fourth Circuit in 1984. As a result of said conviction, Sanford was imprisoned and fined. The joint income tax return filed by petitioner and Sanford for 1977 disclosed a gross income of $18,986, including a salary of $4,713.21 paid to petitioner from Harris-Scott, Inc.; a net income (before exemptions) of $7,273; and a tax liability of $11. Said return omitted gross income in the amount *472 of $51,970.84. Said omitted gross income was with respect to dividends and rental income from SRS Limited and Harris-Scott, Inc. The joint returns for the years 1971 through 1976 disclosed similar or smaller amounts of gross income. OPINION The correctness of respondent's determination of deficiency is not contested in this proceeding. The sole issue which we must decide is whether petitioner should be relieved of her joint and several liability for such deficiency by reason of the provisions of section 6013(e). [2] Petitioner had the burden of proving that she met all of the four conditions of section 6013(e)(1), not just one of them. Estate of Jackson v. Commissioner,72 T.C. 356 (1979); Adams v. Commissioner,60 T.C. 300 (1973). The parties are in agreement that petitioner meets the first two tests provided by the statute. The controversy here involves whether she also met the tests enumerated in sections 6013(e)(1)(C) and (D). *473 We turn first to the requirements of section 6013(e)(1)(C), which requires petitioner to establish "that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, * * *." The issue here is essentially factual, and the test to be applied is what a reasonably prudent person would or should know in the circumstances, keeping in mind such person's level of intelligence, education and experience. See Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975). As we said in Terzian v. Commissioner,72 T.C. 1164, 1172 (1979), in determining whether a spouse "should have known of the omitted income, the standard to be applied is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know of the omission * * *." Applying this standard to the facts of the present case, we conclude that petitioner has failed to meet the test. The facts in this case show that petitioner is an intelligent, mature, and educated woman, with a college degree. She testified, and there is no evidence in this record to the contrary, that she served *474 as an officer and/or director of Sanford's various enterprises at his request, signing any documents which he gave to her to sign, and that in fact she performed no services for any of these enterprises and knew nothing about what they were doing. She also testified that she signed the joint return here in issue without taking any account of its contents or making any inquiry about it. We do not disbelieve this testimony, but the matter does not end there. In signing corporate returns, minutes of meetings and other corporate documents as a director or officer, sometimes under penalties of perjury, petitioner was representing to the world that the matters stated in those documents were true and correct. In these matters, as well as in the signing of her joint return, petitioner assumed a responsibility which she could not abdicate.A spouse, such as this petitioner, may in fact have no actual knowledge of irregularities in the return which she signs, but she cannot close her eyes to matters which would put her on notice that there might be unreported income in the return which she executed. Terzian v. Commissioner,supra;Adams v. Commissioner,supra; *475 G & G Records, Inc. v. Commissioner,T.C. Memo. 1983-343. While it is true that petitioner and her family did not live in a lavish or extravagant lifestyle, we think it is also true that a person of normal intelligence would have to know that the extremely modest income reported in the 1977 joint return, and the returns for prior years, would not support petitioner, Sanford and petitioners' two children in the style in which they lived, including trips to Europe, Las Vegas and the beach. Petitioner has no money of her own, and there is no evidence in this record that Sanford had any source of nontaxable funds which would have supported their lifestyle. In short, we think the very nominal income reported in the return for 1977 and prior years should have put petitioner on notice that something was wrong. Additionally, the record shows that she served as an officer or director in two of Sanford's organizations, SRS Limited and Harris-Scott, Inc., which were the sources of the substantial income which was unreported. Petitioner may have perferred not to know what was going on in Sanford's various enterprises, but we think she was on notice that something was happening, *476 and that she had a duty to inquire. Accordingly, we hold that petitioner has not met her burden of showing that there were no facts within her knowledge, or as to which she was reasonably chargeable with knowledge or notice, from which a prudent taxpayer would have known of the substantial omissions from the 1977 joint return. Petitioner thus fails to qualify as an innocent spouse for the year 1977, and it is unnecessary for us to consider the contentions of the parties with respect to section 6013(e)(1)(D). Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. In the same statutory notice, respondent determined an addition to tax against Sanford R. Shapiro alone, under the provisions of sec. 6653(b). Such addition is not in issue here.↩
2. As material herein, sec. 6013(e), as amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, reads as follows: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.↩