JUDITH D. HAWBAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hawbaker v. Commissioner
Docket No. 6961-86.
United States Tax Court
T.C. Memo 1988-406; 1988 Tax Ct. Memo LEXIS 434; 55 T.C.M. (CCH) 1742; T.C.M. (RIA) 88406; August 31, 1988. *434 Petitioner claims to be an innocent spouse with respect to disallowed deductions on petitioner's and husband's joint income tax returns attributable to a horse racing and breeding activity. Husband and respondent settled husband's tax deficiency by accepting disallowance of such deductions in excess of income from the activity. Held: Respondent is not precluded by the settlement with husband from contending that the deductions were not grossly erroneous and petitioner has failed to prove that they were. Kelly M. Morgan, for the petitioner. Joseph P. Grant, *435 for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: The Commissioner determined deficiencies in the income tax liability of petitioner Judith E. Hawbaker and of her husband John Hawbaker for the years and in the amounts as follows: Year
Amount
1979
$ 117,821.49
1980
282,027.68
1981
186,824.82
1982
303,310.83
Petitioner and her former husband filed separate petitions with respect to these deficiencies. Mr. Hawbaker and respondent reached a settlement of his income tax liabilities for these years. The deficiencies as agreed upon between respondent and Mr. Hawbaker are in the following amounts: Year
Amount
1979
$  96,858.55
1980
215,889.37
1981
133,520.80
1982
29,986.26
In this proceeding Mrs. Hawbaker claims to be an innocent spouse under section 6013(e); [1] she does not otherwise contest the deficiencies as agreed to between Mr. Hawbaker and respondent. Respondent has conceded that Mrs. Hawbaker is an innocent spouse with respect to a number of adjustments making up the deficiencies. The remaining issues are whether petitioner is an innocent spouse with respect to (i) losses *436 attributable to horse racing and breeding activities (the Schedule C activities) [2] and deducted on Schedule C of the several tax returns (the Schedule C deductions), and (ii) a $ 2,500 windfall profit tax deduction on the 1981 return. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. During the years in issue petitioner and Mr. Hawbaker were husband and wife, residing in Marengo, Ohio. Mr. and Mrs. Hawbaker were married in 1964, and divorced in 1987. Petitioner and *437 Mr. Hawbaker separated during 1978 and they remained separated until the divorce became effective. Petitioner resided in Marengo, Ohio, when her petition was filed. In 1967 Mr. Hawbaker purchased the Marengo farm consisting of 12 acres with a residence, three barns, and a fenced-in pasture. [3] The residence also has approximately 3 acres of lawn. No crops were raised on the 12 acres. Prior to 1978, Marengo farm was operated by Mr. Hawbaker as a horse breeding and training farm, the details of which are not available from this record. The Hawbakers had two children who learned to ride on ponies which were kept on the farm. By the time of the Hawbakers' separation the children were riding horses named Gamblin Joe and 7 S Hatband (collectively the children's horses) [4] and participating in quarter horse horse shows. These horses apparently replaced the ponies. In addition, during 1978 and perhaps 1979 colts were kept at the Marengo farm until they had developed sufficiently to be trained. Also, during these years, a former brood mare, beyond an age at which it could be bred, was stabled at the Marengo farm. No horse breeding activities were carried on at the Marengo farm during *438 the years before the Court, and no income was generated on or by the Marengo farm except possibly from sales of colts which had been stabled there. It is unclear whether the children's horses were owned by petitioner, by Mr. Hawbaker, or by the children; we assume that Mr. Hawbaker owned the colts, which we assume were foaled elsewhere, and the old brood mare. During the years 1979-1982, petitioner *439 and the children participated in horse shows nearly every weekend for 9 months out of each year. Petitioner used a motor home and a horse trailer to transport herself, the children, and the horses to shows. Gasoline for the motor home as well as for petitioner's automobile was purchased through the use of gasoline credit cards, the bills for which went to Mr. Hawbaker's office. Petitioner was not on a fixed allowance from Mr. Hawbaker; rather he simply supported petitioner and the children, including their recreational activities such as the horse shows. During these years petitioner and the children (and, during their absence, friends) performed whatever labor was necessary on the Marengo farm. Most of the expenses for the horses, including feed and veterinary bills, were paid directly by Mr. Hawbaker but occasionally petitioner would purchase feed or hay or pay veterinary bills out of her checking account. In that event she routinely furnished Mr. Hawbaker with information as to the amounts paid. These sums were no more than several hundred dollars per year. petitioner kept no business records except for her checking account. Mrs. Hawbaker was aware that prior to 1979 the *440 Marengo farm horse breeding and training activity had been treated as a business by Mr. Hawbaker. For many years she had customarily furnished Mr. Hawbaker from time to time information as to expenditures paid by her out of her checking account which she thought he might need for tax purposes. This practice continued during the years before the Court. However, Mr. Hawbaker had never discussed his business or tax affairs with Mrs. Hawbaker. She knew only that his business affairs were complex. Joint Federal income tax returns were filed by the Hawbakers for the years 1979-1982. These returns were prepared by certified public accountants. At no time did petitioner review the tax returns and in many instances a complete tax return was not shown to her at the time she was requested to sign. The Schedules C attached to the tax returns for the 4-year period before the Court would have revealed, if carefully reviewed, some items related to the Schedule C activities with which Mrs. Hawbaker was familiar such as the children's horses, which are identified by name on the depreciation schedules. There were, however, many items on the depreciation schedule, such as a motor vehicle, which *441 were not located on the Marengo farm. In fact, Mrs. Hawbaker never saw the Schedule C until after the tax returns for these years were filed. The Schedule C activities as indicated on the tax returns were far more extensive than any activity actually conducted on the 12 acres. For example, the Schedules C reported gross income ranging from a low of $ 13,750 to a high of over $ 39,000 during these 4 years, although as we have found there was in fact no income-producing activity carried out on or from the 12-acre parcel. At some point during or prior to the years in issue, Mr. Hawbaker purchased a 42-acre farm across the road from the Marengo farm, approximately half of which was tillable. This farm apparently was leased during the years before the Court. In June 1979 Mr. Hawbaker purchased another farm known as Stillwater Farms, the business of which is described on the Forms 1120 S filed by Stillwater Farms, Inc. for the years 1980, 1981, and 1982 as "horse stables." The product or service is described as "breedings and shows." For 1979 the Stillwater Farms expenses were reported on Schedule F of the Hawbakers' joint Federal income tax return. Stillwater Farms, Inc. was operated *442 as a subchapter S corporation with the net losses being taken into account by the Hawbakers on their individual returns. We cannot determine on this record the nature of the activities which generated the income which was reported on the Schedules C or where the equipment and horses described on the depreciation schedules, which were not on the Marengo farm, were located or used. Neither petitioner nor her children were engaged in any income-producing activity anywhere and they had nothing to do with Stillwater Farms or the 42-acre parcel. With the exception of stabling some colts and the old brood mare, Mr. Hawbaker carried on no activity on the Marengo farm. [5]
We find as a fact that petitioner when she signed the returns for 1979 through 1982 had no information as to the nature or extent of the Schedule C activities. She was under the impression that some of the horses formerly stabled at the Marengo farm had been moved to Stillwater Farms and she apparently know or assumed that Mr. Hawbaker was still involved in breeding *443 and racing horses. Petitioner believed that Mr. Hawbaker had operated the Marengo farm as a business for tax and other purposes prior to their separation and she assumed that he continued to do so although she had neither knowledge nor understanding during the years at issue or prior thereto as to how the farm activity was actually treated for Federal tax purposes and little understanding of the nature of that business. Mrs. Hawbaker was effectively excluded by Mr. Hawbaker from any material facts concerning his business activities and from any knowledge as to the contents of the tax returns. The information she reported to Mr. Hawbaker's office as to expenses incurred for feed and veterinary bills at the Marengo farm was, she assumed, considered by Mr. Hawbaker for tax purposes but she did not know whether any such expenditures were actually deducted on any tax return. Prior to trial preparation, Mrs. Hawbaker did not know that any expenditure at or for the Marengo farm was actually claimed as a deduction on any tax return or that depreciation of the children's horses was deducted. Petitioner knew that the tax returns were prepared by certified public accountants whom she assumed *444 to be competent to do that work accurately. The only tax returns which Mrs. Hawbaker had prepared prior to 1979 were simple returns prior to her marriage to report her compensation from clerical-type jobs. Mrs. Hawbaker from 1960 to 1962 attended a college offering a secretarial-type course. The facts in this record relating to the $ 2,500 windfall profit tax deduction are meager. The parties have stipulated that the adjustment was made because the amount of the windfall profit tax deduction on Schedule E of the 1981 return was not reduced by the amount of the royalty owners' credit taken in 1981 as required by section 280D. OPINION To secure the protection of section 6013(e), the spouse claiming to be an "innocent spouse" must show among other requirements that there is "substantial understatement of tax" attributable to "grossly erroneous items" of the other spouse, and that the claimant did not know and had no reason to know that the return included a substantial understatement. Sec. 6013(e)(1)(B) and (C). The issues which were tried relate to petitioner's actual or constructive knowledge and whether the disallowed deductions are grossly erroneous. [6] Petitioner has *445 the burden of proof on these issues. Rule 142. We have found as a fact that petitioner had no knowledge of the inclusion in any of the returns in question of deductions for the Schedule C activities. The most that petitioner knew is that she sent to Mr. Hawbaker communications showing insignificant amounts of money paid for animal feed and veterinary bills, along with information as to other possible deductions such as medical expenses. While she knew that these amounts had been communicated to Mr. Hawbaker for his consideration and the consideration of his certified public accountants for inclusion in the tax returns, she did not actually know whether any of the amounts had been deducted. Moreover, the amounts as to which she had some knowledge were insignificant when compared to the actual deductions claimed on the several *446 tax returns which range from a low of approximately $ 88,000 in 1979 to a high of over $ 133,000 in 1981 before taking into account gross receipts. The major portion of the activities shown on the several Schedules C for the years involved did not in fact take place on any part of the property constituting petitioner's 12-acre residence during this period. While there is no evidence in this record as to what these activities were or where they took place, petitioner did not participate in or have any information about them. Her lack of actual knowledge is established. Whether petitioner had reason to know of the Schedule C deductions is not quite so clear. A careful inspection of the separate schedules of operating expenses attached to the Schedules C in each of the years shows that depreciation was being claimed on the children's horses and on some equipment on the Marengo farm. It was not, however, being claimed on the motor home which was an integral part of the horse show activities of petitioner's children. However, we seriously doubt that Mrs. Hawbaker would have been able to comprehend the meaning of the separate schedules at the time she signed each of these returns, *447 or even in some years associate a particular schedule with the related page of the form 1040, unless she were assisted by someone more familiar than petitioner with Federal income tax accounting and return preparation. For example, the 1982 return has within its four corners 50 pages of typed schedules. Statement 10, which includes the depreciation applicable to the Schedule C activities, is not even referenced on that Schedule C. Of course an innocent spouse may not escape liability on the grounds that she did not know of or understand the tax implications of a transaction if it is clear that she was aware of the transaction itself. Purcell v. Commissioner,86 T.C. 228, 236 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Also a spouse cannot close her eyes to expenditures, at least if lavish, Mysse v. Commissioner,57 T.C. 680, 699 (1972), but there is no evidence here of lavish expenditures. Where, as in this case, the husband controlled all of the family's financial affairs, did not undertake to involve the wife in business transactions or in the tax reporting thereof, and made no effort to explain the treatment of transactions *448 on tax returns presented to the wife for signature, we have held that the wife had no reason to know of the understatement. Guth v. Commissioner,T.C. Memo. 1987-522, on appeal (9th Cir., Jan. 11, 1988); Estate of Cardulla v. Commissioner,T.C. Memo. 1986-307. Petitioner has sufficiently shown that a reasonably prudent taxpayer with her knowledge, or in this case lack of knowledge, of the family finances would have no reason to know of the understatements. Terzian v. Commissioner,72 T.C. 1164, 1170-1171 (1979); compare Estate of Jackson v. Commissioner,72 T.C. 356, 361 (1979). We do not consider that under the facts of this case Mrs. Hawbaker had an affirmative duty to inquire of Mr. Hawbaker as to the tax treatment of costs incurred at the Marengo farm property or as to the Schedule C activities. Compare Cohen v. Commissioner,T.C. Memo 1987-537. Thus, we find for petitioner on the issue of actual and constructive notice. The statutory notice in this case disallowed all of the deductions claimed on each of the returns with respect to the Schedule C. activities as well as Stillwater Farms, except *449 to the extent permitted by section 183, on the theory that the transactions had not been entered into with the requisite profit objective. Respondent and Mr. Hawbaker settled his case on the basis of recognizing Stillwater Farms as a profit-making activity and treating the Schedule C activities as a hobby. No useful purpose would be served by trying to speculate from the information in this record as to the nature of the Schedule C activities as contrasted with Stillwater Farms activities or as to the factors which led to the settlement of Mr. Hawbaker's tax liability on this basis. Petitioner contends that respondent cannot now deny that the Schedule C deductions were grossly erroneous since respondent's determination that this was a not-for-profit activity was accepted by respondent and Mr. Hawbaker in settlement of the matter. In other words, petitioner contends that respondent cannot now argue that these deductions had some basis in law or fact. Mere disallowance of a deduction by respondent in the statutory notice is not sufficient to show that the deduction is grossly erroneous. Douglas v. Commissioner,86 T.C. 758 (1986); Neary v. Commissioner,T.C. Memo. 1985-261. *450 A deduction is grossly erroneous when either it has not been made, or if made is not deductible under well-settled legal principles and no substantial legal argument can be made to support its deductibility. Douglas v. Commissioner, supra at 726-763. We do not believe that respondent's agreement with Mr. Hawbaker to allow deductions attributable to Stillwater Farms and to disallow those attributable to the Schedule C activities establishes that the latter deductions were grossly erroneous. We can easily conclude on this record that the depreciation claimed on Miss Gamblin Joe and 7 S Hatband had no basis in law or fact. Those two horses were not used in any profit-making enterprise but were devoted to the children's recreation. To the extent that cost of fees, veterinary bills and the like with respect to these two horses were also deducted, such costs likewise would be grossly erroneous deductions. But there is no basis in this record for estimating such amounts. There are simply no facts as to the balance of the Schedule C deductions, either the depreciation or expenses incurred at the Marengo farm or elsewhere. Petitioner's belief that some of the horses depreciated *451 on the Schedules C were actually stabled on Stillwater Farms, while is probably correct, does not help. For example, if the aged mare stabled at the Marengo farm had in fact been used in a business, expenses attributable to her should be deductible even though she was no longer usable for business purposes. We are forced to conclude that petitioner has failed to prove that these deductions were grossly erroneous. Thus, except for the deductions attributable to depreciation on the children's horses, petitioner has failed to show entitlement to innocent spouse status with respect to the Schedule C deductions. Section 280D provides as follows: "No deduction shall be allowed for that portion of the tax imposed by section 4986 for which a credit or refund is allowable under section 6429." The stipulation of the parties is sufficient to show that there is no basis in law or fact for this deduction. Mrs. Hawbaker did not know that it had been taken and, as we have already concluded, had no reason to know. Thus, as to it petitioner is an innocent spouse. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Schedule F of the 1979 tax return reports losses from Stillwater Farms, which also involved boarding and other activities of Mr. Hawbaker with horses. During the years 1980, 1981, and 1982, these activities were carried on by Stillwater Farms, Inc., a small business corporation wholly owned by Mr. Hawbaker. While the Schedule C activities appear to be related to the Stillwater Farms activities, the nature and extent of the relationship cannot be determined from this record. ↩
3. The term "Marengo farm" is used in this opinion to refer solely to the 12-acre parcel of land and to the activities carried on during these years at this location. Unfortunately, the stipulation seems to refer to the activity or activities reported on the several Schedules C as "Marengo farm" although, as our findings of fact will show, only a small portion of the expenses and none of the income was generated directly on or from this 12-acre parcel. While the parties have stipulated that the Schedule C losses were those of the Marengo farm, they have also stipulated that petitioner did not personally conduct any business activity at the Marengo farm. ↩
4. Use of the term "children's horses" carries no implication as to ownership of these two horses since the record is silent on this fact. ↩
5. Although the Schedule C activities are referred to by counsel for the parties as "Marengo farm" activity, the tax returns do not use that term. ↩
6. Respondent in his initial brief also argues that petitioner did not prove the amount of her preadjustment year income and thus did not show compliance with that requirement. That issue was raised for the first time by respondent on brief, and the issue is not before the Court. Aero Rental v. Commissioner,64 T.C. 331, 338↩ (1975).