ERIC P. SCHOCH and ANETTE K. SCHOCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schoch v. Commissioner
Docket No. 18786-89
United States Tax Court
T.C. Memo 1991-547; 1991 Tax Ct. Memo LEXIS 595; 62 T.C.M. (CCH) 1135; T.C.M. (RIA) 91547; November 4, 1991, Filed *595 Decision will be entered under Rule 155. Harvey D. Tack, for the petitioners. Marilyn Devin and Joseph K. Fletcher III, for the respondents. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 534,836 in petitioners' Federal income tax for the taxable year 1988. The issues for decision are: (1) Whether petitioners failed to report gross income in the amount of $ 1,990,858 from the sales and exchanges of gold and platinum coins in 1988; and (2) whether petitioner Anette K. Schoch is entitled to relief as an innocent spouse pursuant to section 6013(e). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Chevy Chase, Maryland, when they filed their *596 petition. During 1988, petitioners resided in Los Angeles, California. On November 4, 1988, petitioner (all references to petitioner are to Eric P. Schoch) and a companion, using false identities, attempted to sell $ 469,000 worth of platinum coins, consisting of 400 Australian Koala platinum coins and 400 Australian Noble platinum coins, to Gold and Silver Emporium, a dealer in precious metals. Petitioner also used a false identity in completing Federal tax forms at Gold and Silver Emporium. Before the transaction was completed, petitioner and his companion were arrested by officers of the Los Angeles Police Department on suspicion of dealing in stolen coins. When arrested, petitioner was in possession of 196 Australian Koala platinum coins, 224 Australian Noble platinum coins, and $ 9,985 in cash. Petitioner initially declared that the platinum coins and cash did not belong to him, but later admitted ownership. Petitioner was not prosecuted in connection with the arrest. The platinum coins in petitioner's possession were taken into custody by the police, along with the $ 9,985 in cash, which petitioner had received from a sale of coins immediately prior to the arrest. On *597 November 14, 1988, respondent issued a Notice of Termination Assessment of Income Tax to petitioner pursuant to section 6851. The Notice of Termination Assessment stated that during 1988 petitioner had realized $ 517,935 of income, consisting of cash in the amount of $ 9,911, the value of the platinum coins in his possession when arrested, or $ 234,524, and prior sales of gold and platinum coins during 1988 to Gold and Silver Emporium totaling $ 273,500. The platinum coins taken into custody by the police were returned to petitioner, who sold them on December 9, 1988. The total selling price for the platinum coins was $ 251,804, which was disbursed to the Internal Revenue Service in the amount of $ 142,458, the California Franchise Tax Board in the amount of $ 46,944.11, and petitioner in the amount of $ 62,401.89. Petitioner met with Martin Laffer, a certified public accountant, on December 1, 1988, to discuss his liability for Federal income taxes. Petitioner claimed to have accumulated the coins he sold during 1988 over a period of years through the trading of gold coins, platinum coins, and silver bars. He claimed to have first invested in precious metals on June 1, 1985, *598 with a purchase of 250 Australian Noble platinum coins for $ 68,000. Petitioner determined this date by dividing $ 68,000 by 250, resulting in a price per coin of $ 272. He then determined that platinum had sold at $ 272 per ounce on June 1, 1985, and concluded that he made his initial purchase on that date. Petitioner claimed the transaction took place at Advance Stamp and Coin, and that he lost the receipt from the purchase. Petitioner had no books or records of any of the claimed transactions. Laffer recommended that petitioner attempt to reconstruct the claimed trades from his initial investment through 1988. Based on the claimed reconstruction, Laffer prepared petitioners' 1988 joint Federal income tax return, as well as amending petitioners' joint Federal income tax return for 1987 and petitioner's Federal income tax return for 1986. In their joint Federal income tax return for 1988, petitioners reflected total receipts from multiple sales and exchanges of platinum and gold coins of $ 1,990,858, a basis in the coins of $ 1,918,202, and a gain from the sales and exchanges of $ 72,656: Purchases
Sales
Date
Qty.
Cost
Date
Qty.
Sales Price
Basis
12/14/87
612
$ 313,344
0
01/22/88
612
$ 307,836
$ 313,344
01/22/88
634
307,490
0
01/29/88
634
294,810
307,490
1/29/88
635
294,640
0
02/19/88
250
119,000
116,000
02/19/88
260
118,560
0
03/01/88
200
87,000
92,155
03/01/88
172
87,032
0
03/10/88
22
9,900
10,414
03/29/88
15
6,975
7,101
04/28/88
21
9,618
9,941
04/29/88
55
29,590
26,036
04/29/88
63
29,295
0
05/03/88
22
9,944
10,394
05/05/88
22
10,010
10,394
05/10/88
21
9,702
9,921
05/10/88
70
39,480
0
05/17/88
37
21,386
17,895
05/17/88
45
21,375
0
05/19/88
21
9,765
10,143
05/26/88
21
9,723
10,143
05/29/88
30
17,940
0
06/02/88
565
360,470
276,318
06/02/88
757
360,332
0
06/09/88
21
9,765
9,997
06/16/88
21
9,639
9,997
06/23/88
17
7,752
8,093
07/07/88
22
9,856
10,473
07/18/88
11
4,906
5,237
07/20/88
12
5,424
5,713
07/25/88
23
9,936
10,949
08/01/88
12
5,304
5,713
08/04/88
22
9,702
10,473
08/17/88
10
4,400
4,761
09/01/88
15
6,570
7,141
09/22/88
24
9,768
11,425
09/23/88
547
221,535
260,400
09/23/88
215
105,995
0
09/23/88
360
177,480
0
09/29/88
100
50,500
49,291
09/29/88
118
48,144
0
09/29/88
4
890
0
09/30/88
24
9,213
11,386
10/06/88
19
9,975
9,014
10/12/88
24
9,888
11,386
10/18/88
23
9,660
10,911
10/20/88
23
9,660
10,911
10/20/88
1
216
474
10/26/88
24
9,936
11,386
11/01/88
17
9,809
8,065
11/04/88
17
9,911
8,065
12/09/88
224
132,832
106,268
12/09/88
196
118,972
92,984
TOTAL
3,975
1,921,997
3,967
1,990,858
1,918,202
*599 On his 1985 Federal income tax return, petitioner reported total income of $ 1,298. The 1985 return was never amended. On his 1986 Federal income tax return, petitioner reported total income of $ 831. On his amended 1986 return, petitioner reported total income of $ 40,331. On their 1987 joint Federal income tax return, petitioners reported total income of $ 10,681. On their amended 1987 return, petitioners reported total income of $ 157,832. On their 1988 joint Federal income tax return, petitioners reported total income of $ 74,077. In the notice of deficiency, respondent determined that petitioners had a basis of zero in all of the coins sold and exchanged during 1988, and increased petitioners' capital gains from $ 72,656 to $ 1,990,858. Attached to the Notice of Deficiency is a computer printout prepared by Gold and Silver Emporium which reflects petitioner's transactions with the firm during 1988. The printout reflects an exchange on March 1, 1988, in which petitioner received 172 Australian Noble platinum coins, at a unit price of $ 506, for 200 U.S. Gold Eagle coins, at a unit price of $ 435, with a difference in value of $ 32 paid by petitioner. According to the *600 printout, no further exchanges were made in 1988. The remaining transactions reflected in the printout consist of 29 sales of gold and platinum coins, only one of which exceeds $ 10,000. Most of the sales were for slightly less than $ 10,000. Contrary to what petitioners reported on their 1988 joint Federal income tax return, with the exception of the exchange on March 1, 1988, of $ 87,000 of platinum coins for gold coins, petitioner did not engage in any exchanges of coins during 1988; his transactions were limited to cash sales. Anette K. Schoch was born and raised in Sweden. She first moved to the United States in January 1986, and met petitioner in December of that year. Petitioners married in June 1987. Anette's participation in the filing of petitioners' 1988 joint Federal income tax return was limited to attending a meeting with Laffer and signing the return. During the meeting, Laffer explained that he had amended petitioners' 1986 and 1987 Federal income tax returns to reflect unreported gains from sales and exchanges of precious metals, and he reviewed those returns with petitioners. When she signed the 1988 joint Federal income tax return, Anette knew or had reason *601 to know that: (1) Gold and platinum coins were kept in a safe in petitioners' residence during 1987 and 1988; (2) sales and exchanges of coins were reported on the return; (3) petitioner had been arrested on suspicion of stealing platinum coins; (4) respondent had made a termination assessment with respect to the gold and platinum coins; (5) petitioner had no books or records regarding the gold and platinum coins; (6) the 1988 joint Federal income tax return was based on a claimed reconstruction prepared by petitioner; (7) petitioner failed to report income from sales and exchanges of coins in prior years; (8) the funds for petitioners' support were derived from sales of coins; (9) the source of $ 43,000 deposited into petitioner's bank account in October 1988 was the sale of coins; (10) the source of a $ 67,000 down payment on a $ 270,000 home in 1988 was the sale of coins. OPINION I. Burden Of Going Forward With The Evidence
As a preliminary matter, we address petitioners' contention that the burden of going forward with the evidence is placed on respondent because the statutory notice of deficiency was arbitrary and without foundation. A statutory notice of deficiency *602 ordinarily carries with it a presumption of correctness that, except where provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, places the burden of proof and burden of going forward with the evidence on the taxpayer. Rule 142(a). However, a showing by the taxpayer that the statutory notice is arbitrary or without foundation has the effect of placing the burden of going forward with the evidence on respondent. Helvering v. Taylor, 293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935); Jackson v. Commissioner, 73 T.C. 394 (1979). When petitioners ask the Court to find the statutory notice of deficiency arbitrary or without foundation, they are asking the Court to look behind the statutory notice to examine the evidence used by respondent in making his determination. Jackson v. Commissioner, supra at 400. We have looked behind the statutory notice only in those rare instances involving illegal unreported income where respondent introduced no substantive evidence, but rested on the presumption of correctness, or when there is substantial evidence of unconstitutional conduct on respondent's part. Jackson v. Commissioner, supra at 401; *603 Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). The instant case does not involve illegal unreported income, or any unconstitutional conduct by respondent. Furthermore, respondent has introduced abundant substantive evidence, rather than resting on the presumption of correctness. We therefore reject petitioners' contention that the notice of deficiency is arbitrary or without foundation, and we will not look behind the notice of deficiency to examine the evidence used by respondent in making his determination. II. Unreported Income
Gross income includes gains derived from dealings in property. Sec. 61(a)(3). Except under circumstances not present in the instant case, the entire amount of the gain on the sale or exchange of property is recognized. Sec. 1001(c). The gain from the sale or exchange of property is the excess of the amount realized by the taxpayer over the adjusted basis of the property transferred by the taxpayer. Sec. 1001(a). The amount realized is the sum of any money received plus the fair market value of any other property received. Sec. 1001(b). The adjusted basis of the property in the instant case is its *604 cost to petitioner. Secs. 1011(a) and 1012. Taxpayers must keep such permanent books of account or records as are sufficient to establish the amount of gross income or other matters required to be shown in any tax return. Sec. 1.6001-1(a), Income Tax Regs.
Petitioner testified that he made an initial investment in platinum coins of $ 68,000 on June 1, 1985, and engaged in his first exchange at Advance Stamp and Coin in September 1986, realizing a gain of $ 98,000. Petitioner also claimed to have engaged in an exchange of 203 U.S. Gold Eagle coins for 151 silver bars weighing over 1,000 pounds on February 19, 1987. However, the president of Advance Stamp and Coin testified that its business records did not reflect these claimed transactions, and that he had never seen petitioner. Petitioner testified that he engaged in a number of exchanges during 1987 and 1988 at Gold and Silver Emporium. However, the director of finance of Gold and Silver Emporium testified that, with the exception of an exchange on March 1, 1988, and the sales reflected in the printout accompanying the notice of deficiency, its business records did not reflect these claimed transactions. Petitioner testified *605 that he engaged in a number of exchanges during 1987 and 1988 at Continental Coin Corporation. However, the director of administrative services of Continental Coin Corporation testified that its business records did not reflect these claimed transactions. We attach little credibility to petitioner's claim that, without the benefit of any records, he parlayed an initial investment of $ 68,000 into over $ 500,000 of gold and platinum coins in less than 4 years. We are not compelled to give credit to testimony which is indefinite, uncorroborated, conflicting, fantastic, or unrealistic. Winters v. Dallman, 238 F.2d 912 (7th Cir. 1956). Without records showing previous purchases and exchanges, petitioner could not know when it would be profitable to conduct an exchange or sale. In addition, we find it inherently unlikely, given petitioner's unsophisticated trading methods, that he could have realized such gains in so short a time. Finally, petitioner has failed to establish, other than through his uncorroborated testimony, the source of the $ 68,000 he claims to have invested in 1985, which he claims represents savings from unreported income. In addition, we *606 attach no weight to petitioner's claimed reconstruction of purchases, sales, and exchanges. It would be a simple matter for petitioner, starting with his actual 1988 sales and exchanges, to fabricate transactions beginning with 1985, thus spreading his gains over several taxable years. Without corroboration, the claimed reconstruction is of no probative value. Petitioner objects that, given that his claimed reconstruction was prepared primarily from memory, a degree of inaccuracy with respect to the dates of sales and exchanges is to be expected. However, the business records of Advance Stamp and Coin, Gold and Silver Emporium, and Continental Coin Corporation were available to petitioner, and petitioner failed to examine the records to establish that the claimed transactions took place on dates other than those listed in the claimed reconstruction. However, we find that respondent erred in determining that petitioners realized gains in the amount of $ 1,990,858 from sales and exchanges of gold and platinum coins in 1988. In arriving at his determination, respondent accepted petitioners' reporting of multiple sales and exchanges of gold and platinum coins during 1988. Respondent *607 then determined that, with respect to each separate transaction, petitioners had a basis of zero in the coins transferred, and therefore realized income equal to the value of the coins received in the exchange, resulting in a total gain for the year of $ 1,990,858. However, petitioners argue, and we agree, that if the transactions reported in the 1988 return actually took place, petitioners could not have had a basis of zero in the coins transferred as part of every single transaction. The first claimed transaction took place January 22, 1988, when petitioner allegedly exchanged 612 coins of one type for 634 coins of a different type with a fair market value of $ 307,490. Because petitioners cannot establish any basis in the coins transferred, they would have realized a gain of $ 307,490, the fair market value of the property received, on the exchange. However, with regard to the 634 coins received, petitioners would have a cost basis of $ 307,490, pursuant to sections 1011(a) and 1012, because such was the value of the property which petitioner exchanged for the 634 coins. The same analysis would apply to each additional exchange or sale which occurred in 1988. Therefore, we *608 find that respondent erred in determining that petitioners realized a gain in the amount of $ 1,990,858 from sales and exchanges of gold and platinum coins in 1988. However, respondent established that, with the exception of an exchange on March 1, 1988, 29 sales of gold and platinum coins to Gold and Silver Emporium, and a sale of platinum coins on December 9, 1988, none of the transactions claimed by petitioners in their 1988 joint Federal income tax return took place. We find that petitioners have failed to substantiate any basis in the coins that were sold or exchanged during 1988. Aside from his uncorroborated testimony, petitioner introduced no evidence showing a basis in any of these coins. Petitioner's testimony was thoroughly discredited by the credible and disinterested testimony of employees of Advanced Stamp and Coin, Gold and Silver Emporium, and Continental Coin Corporation. Finally, petitioners contend that they are entitled to a basis of $ 87,032 in the platinum coins which were sold for $ 251,804 on December 9, 1988. Petitioners argue that the 172 platinum coins received in the exchange on March 1, 1988, were among the platinum coins sold for $ 251,804 on December *609 9, 1988. These 172 platinum coins, petitioners argue, have a cost basis of $ 87,032. We agree that the 172 platinum coins have a cost basis of $ 87,032. Had petitioner established that the platinum coins sold on December 9, 1988, represented petitioner's entire remaining inventory, we would agree that the platinum coins received on March 1, 1988, were among such coins and that petitioners are entitled to a cost basis of $ 87,032. However, petitioners have failed to offer any credible evidence showing that they have not retained possession of the platinum coins received on March 1, 1988, and we therefore reject their argument. Petitioners must prove their case by competent evidence, not through inference and speculation. Wood Corp. of Delaware v. Commissioner, 22 B.T.A. 1182 (1931), affd. 63 F.2d 1023 (6th Cir. 1933). In conclusion, during 1988 petitioners realized capital gains in the amount of $ 87,000 from the exchange of platinum coins at Gold and Silver Emporium on March 1, 1988, $ 247,326 from various sales of gold and platinum coins at Gold and Silver Emporium throughout 1988, and $ 251,804 from the sale of platinum coins on December *610 9, 1988, for a total of $ 586,130. III. Relief As An Innocent Spouse
Under section 6013(d)(3), if a husband and wife file a joint return for a year, then "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." Under section 6013(e), if certain requirements are met for a year, then a spouse may be relieved of all or a portion of this joint tax return liability for the year. Section 6013(e)(1) provides that: (a) Where a joint return was filed, (b) on that return there is a substantial understatement of tax which is attributable to grossly erroneous items of one spouse, (c) the other spouse establishes that in signing the return he or she did not know and had no reason to know that there was such substantial understatement, and (d) taking into account all of the facts and circumstances, it is inequitable to hold the spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the spouse to whom the substantial understatement was not attributable is relieved from liability for the tax on such substantial understatement. Petitioners bear the burden of proving *611 that each statutory requirement of section 6013(e) is satisfied. Failure to prove any one of the statutory requirements will prevent Anette from qualifying for relief. Rule 142(a); Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. a Memorandum Opinion of this Court; Purcell v. Commissioner, 826 F.2d 470 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. 126 (1990). The standard to be applied in determining whether a putative innocent spouse has reason to know of the substantial understatement under section 6013(e)(1)(C) is whether "a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Stevens v. Commissioner, supra at 1505. A spouse may in fact have no actual knowledge of irregularities in the return she signs, but she cannot ignore matters which would have put her on notice that there may be irregularities. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). *612 In addition, the taxpayer claiming innocent spouse status must establish that she is unaware of the circumstances that give rise to the error on the tax return, and not merely be unaware of the tax consequences. Bokum v. Commissioner, supra.
Due to the extent of her knowledge of the circumstances leading to the preparation of the 1988 joint Federal income tax return, and the method of its preparation, Anette could be expected to know that further investigation into the reporting of the gains from the sale of precious metals on the 1988 joint Federal income tax return was warranted. Her ignorance of the tax consequences of the error does not qualify Anette for relief. Anette knew or had reason to know of the substantial understatement, and therefore fails to qualify for relief as an innocent spouse under section 6013(e). In light of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩