GLENDA L. WRIGHT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wright v. Commissioner
Docket No. 9134-90
United States Tax Court
T.C. Memo 1992-699; 1992 Tax Ct. Memo LEXIS 744; 64 T.C.M. (CCH) 1482; December 8, 1992, Filed *744 Decision will be entered under Rule 155. For Petitioner: Jack Bryant. For Respondent: Martin Van Brauman. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Year
Deficiency
Sec. 6653(b)(1) [1]
Sec. 6653(b)(2)
Sec. 6661
1980
$ 116,859.42
$ 58,429.71
--
--  1981
231,591.12
115,795.56
--
--  1982
80,528.05
40,264.03
[2]
$ 20,132.02
After concessions, the issues for decision are: (1) Whether petitioner is an innocent spouse pursuant to section 6013(e). We hold that she is not. (2) Whether petitioner is liable for additions to tax for fraud for 1980, 1981, and 1982 under section 6653(b)/6653(b)(1) and for 1982 under section 6653(b)(2). We hold that she is not. (3) Whether petitioner is liable for the addition to tax *745 for 1982 under section 6661. We hold that she is. Section references are to the Internal Revenue Code in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner resided in Midland, Texas, when she filed her petition. Petitioner and Cal B. Wright were married in 1957 and divorced in 1988. The Wrights had two children, born in 1959 and 1961. The Wrights lived in Hobbs, New Mexico, for 1 year after their marriage. Then they moved 40 miles to Jal, New Mexico, where they lived until 1981. In 1981, the Wrights sold their Jal home and moved to Midland, Texas, where they purchased a four-bedroom house. That same year, the Wrights had a swimming pool built at the Midland house which cost $ 17,850. The house was awarded to petitioner in her divorce from Mr. Wright. She lived there at the time of trial. In the 1960s, the Wrights purchased a cabin in Ruidoso, New Mexico, jointly with petitioner's mother and her husband. Ruidoso is a resort area about 300 miles from Midland. The cabin had one bedroom and one bathroom. The Wrights *746 renovated the cabin around 1981. At that time, they added a redwood deck with a metal undercovering and a concrete slab on the ground below to create a carport. They also added sidewalks from the house to the carport, built retaining walls, and repaired ceilings in the house. These renovations cost $ 13,618. In 1987 or 1988, petitioner gave her interest in the Ruidoso property to her children. Petitioner graduated from nursing school in 1970 as a licensed practical nurse. She later returned to school and became a registered nurse in 1975. Petitioner worked as a nurse while the Wrights were living in Jal. She continued working as a nurse when they moved to Midland. At the time of trial, she worked for Midland Memorial Hospital. Mr. Wright worked for El Paso Natural Gas (El Paso) in Jal, full time as a lab technician from 1957 to 1979. During the time he worked for El Paso, and after he stopped working for the company, he had a business called Wright Equipment Co. (Wright Equipment), in which he bought and sold oil field pipe and equipment. Mr. Wright did a lot of his business in cash. He had an office in the Wrights' home. In 1982, Wright Equipment purchased a 1965 Cessna *747 320 airplane for $ 23,000. Sometimes petitioner accompanied Mr. Wright in the plane when he traveled to Houston because she had family there. Petitioner was to receive the plane as part of her divorce from Mr. Wright but she never did because it was sold at a sheriff's auction. Petitioner's mother gave petitioner a new BMW in 1974, which she drove until 1981 or 1982 when she got a new car, a 1982 Datsun 280Z. This Datsun cost $ 20,205 and was financed through Permian Bank and Trust. Petitioner sold the Datsun sometime after Mr. Wright was taken into custody in 1987. In 1980, Wright Equipment purchased a 1980 Lincoln Continental Mark VI for $ 17,682, which Mr. Wright drove. Mr. Wright assigned a cash rebate to the dealer as a downpayment for the car and financed the balance through Permian Bank and Trust. In 1987, petitioner bought a Jeep Wagoneer, which she later sold to her father. At the time of trial, petitioner drove the 1974 BMW. For many years, petitioner and her husband put substantial amounts of cash in a cedar chest. Near the end of 1980, there was $ 250,000 in cash in the cedar chest. Mr. Wright took money from the cedar chest and added money to it when he bought *748 and sold equipment. At times, petitioner was with Mr. Wright when he went through the cash in the cedar chest. She was also with him on occasion when he put money in a safe deposit box. During the years at issue, the Wrights owned hundreds of thousands of dollars in certificates of deposit (CD's) at Permian Bank and Trust. Many of them contained petitioner's name -- either solely, jointly with Mr. Wright, or as trustee or beneficiary for Mr. Wright. Many of them were also used as collateral for loans. Mr. Wright was arrested in 1987. On October 12, 1988, he was convicted of violating section 7206(1) for willfully filing the 1980 return without disclosing the income and deductions relating to his business and section 7201 for willfully attempting to evade or defeat income taxes by filing false and fraudulent 1981 and 1982 returns and understating the taxable income therein. United States v. Wright, No. MO-88-CR-25 (W.D. Tex. 1988). The Court found that Mr. Wright, on the returns for 1980 through 1982, understated taxable income and income tax liabilities, and that these understatements were due to a willful attempt by Mr. Wright to evade or defeat the tax thereon. The *749 Court found that the 1980, 1981, and 1982 returns understated taxable income by $ 208,762.37, $ 376,364.08, and $ 171,779.94, respectively, and understated liabilities for the same years by $ 116,859.42, $ 231,591.12, and $ 80,528.05, respectively. Petitioner was not a party in United States v. Wright, supra, and the Court made no finding relating to her. Mr. Wright was also convicted of narcotics offenses in a separate trial. His sentences for the tax and narcotics convictions ran concurrently. After Mr. Wright was incarcerated in 1987, he phoned petitioner daily and instructed her how to pay off bills and wind down his business activities. In a document dated July 20, 1987, Mr. Wright authorized petitioner "to oversee, in [his] absence, all business transactions with B & R Inspection." B & R Inspection & Equipment Co., Inc. (B & R), sells oil field tubular goods. Leonard Busby is the president of B & R. Mr. Busby and Mr. Wright were business associates during the years at issue. Mr. Wright stored some of his inventory in Mr. Busby's yard. From April through November 1987, B & R wrote several checks to Wright Specialty Co., some of which were endorsed by petitioner. *750 These checks represent the sale of oil pipe inventory which had been owned either solely by Mr. Wright or jointly by Mr. Wright and Mr. Busby. After Mr. Wright was incarcerated, petitioner transferred some CD's to pay off some loans. These loans related to the oil field business and Mr. Wright's attorney's fees. Petitioner cashed cashier's checks totaling about $ 240,000 at Lamar Savings and at Guaranty Federal Savings and Loan near the end of 1987. 2. Petitioner's Returns
Cal B. Wright and petitioner filed joint income tax returns for 1977, 1978, 1979, 1980, 1981, and 1982. The Wrights' 1980, 1981, and 1982 returns showed adjusted gross income of $ 19,529.94, $ 27,751.78, and $ 24,464.46, respectively. Petitioner reported wages of $ 18,337.61, $ 12,439.32, and $ 2,711.50 on those returns. OPINION 1. Innocent Spouse
The first issue for decision is whether petitioner is an innocent spouse pursuant to section 6013(e). A husband and wife who make a joint return are jointly and severally liable for tax. Sec. 6013(d)(3). Joint and several liability also applies to additions to tax. Sec. 6662(a)(2). However, section 6013(e) sets out four requirements which, *751 if met, treat a spouse as an innocent spouse, thereby relieving a spouse from joint and several liability. A failure to meet any of these requirements precludes an individual from qualifying as an innocent spouse. Estate of Jackson v. Commissioner, 72 T.C. 356, 362 (1979). The first two requirements are that joint returns were made for each year at issue and that there was a substantial understatement of tax attributable to grossly erroneous items of the other spouse on each return. Sec. 6013(e)(1)(A) and (B). The parties agree that these requirements have been met. We will discuss the third and fourth requirements separately. a. Knowledge
The taxpayer asserting innocent spouse status must prove that he or she did not know, and had no reason to know, of the substantial understatement of tax. Sec. 6013(e)(1)(C). The test to use in deciding whether a taxpayer had reason to know of the substantial understatement is whether, at the time of signing the returns, a reasonable person in the taxpayer's circumstances could have been expected to know of the substantial understatements or that further investigation was warranted. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), *752 affg. T.C. Memo. 1988-63; Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. on this issue T.C. Memo. 1984-310; Sanders v. United States, 509 F.2d 162, 166-168 (5th Cir. 1975). A spouse may not close his or her eyes to unusual or lavish expenditures which might have alerted him or her to unreported income, Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Mysse v. Commissioner, 57 T.C. 680, 699 (1972), because section 6013(e) is designed to protect the innocent, not the intentionally ignorant. Hayes v. Commissioner, T.C. Memo. 1989-327. An alleged innocent spouse's role as homemaker and her complete deference to her husband's judgment concerning the couple's finances, standing alone, are insufficient to establish that the spouse had no "reason to know." Stevens v. Commissioner, supra at 1505-1506; Shea v. Commissioner, supra at 566. Petitioner argues that she was not involved in her former *753 husband's business except to the extent of occasionally answering the phone in his home office. She contends that she did not have any signature authority on any bank account that related to the pipe business and she did not do any substantial entertaining to help Mr. Wright in the business. Also, she testified that she did not have any social contact with any of Mr. Wright's customers. Petitioner stated that she did wind down Mr. Wright's business affairs under his direction after he was arrested. We conclude that this was only a temporary involvement, forced on petitioner by her husband's imprisonment. Petitioner's testimony on this point was corroborated by the testimony of Leonard Busby, Mr. Wright's former business associate. However, there are several factors which suggest that petitioner knew or should have known of the understatements. First, the 1980, 1981, and 1982 returns showed adjusted gross income of $ 19,529.94, $ 27,751.78, and $ 24,464.46, respectively. Petitioner testified that she believed the amounts listed on these returns were correct. During the years at issue, the Wrights enjoyed a lifestyle which would not have been possible on such limited income. *754 They owned a house with a swimming pool and an interest in a resort cabin. Mr. Wright owned a Cessna airplane. The Wrights owned expensive cars. Petitioner should have known that their income was higher than that shown on the returns. Frederick v. Commissioner, T.C. Memo. 1981-602. Second, petitioner testified that she knew of the existence of substantial amounts of cash in a cedar chest, and that she was with Mr. Wright on occasion when he went through the cash. She testified that, although the amount varied, near the end of 1980 there was approximately $ 250,000 in cash in the cedar chest. Petitioner sometimes was with her former husband when he put money in a safe deposit box. Petitioner testified that Mr. Wright's business required him to keep cash on hand. Mr. Busby stated there is a need for immediate payment in the pipe business. However, notwithstanding the possible business purpose of the cash, the fact is that the cash was in existence and petitioner was aware of it. This should have put her on notice of the understatements. Finally, petitioner questioned the legitimacy of her former husband's financial dealings. Petitioner testified *755 that, at no time during her marriage, until 1987 when her husband was arrested, did she get any indication that her husband was not doing, businesswise and taxwise, what he was supposed to do. We think petitioner's denials are self-serving and implausible in light of the Wrights' relatively high standard of living, the large amounts of cash she had seen, and their low reported income. We recognize that petitioner testified that Mr. Wright made most of the financial and nonfinancial decisions of their marriage. For example, she stated that he initially chose the Midland house and made the payments on the house, that he designed and oversaw the improvements to the Ruidoso property, and that he picked out a new car for her on one occasion, arranged to have it picked up, and arranged for its financing. Viewed in isolation, these facts tend to show that petitioner did not have knowledge of the substantial understatement of tax. However, we think the other factors clearly show she had reason to know of the substantial understatement. Taking all of the above into consideration, we find that petitioner had reason to know that the Wrights' 1980, 1981, and 1982 returns substantially understated *756 their income tax. b. Equity
A taxpayer claiming innocent spouse status must also prove that, taking into account all the facts and circumstances, it is inequitable to hold the spouse seeking relief liable for the deficiency. Sec. 6013(e)(1)(C). In deciding whether it is inequitable to hold a spouse liable for a deficiency, we take into account whether the person desiring relief as an innocent spouse significantly benefited, either directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); H. Rept. 98-432 (Part 2) 1501, 1502 (1984); sec. 1.6013-5(b), Income Tax Regs.
Normal support is not a "significant benefit" for purposes of determining whether it is inequitable to hold petitioner liable for the deficiency. Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); Hayes v. Commissioner, supra; sec. 1.6013-5(b), *757 Income Tax Regs. Normal support is to be determined by the circumstances of petitioner. Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975); Flynn v. Commissioner, supra."Unusual support or transfers of property to the spouse would, however, constitute 'benefit' and should be taken into consideration" even when the benefit was received "several years after the year in which the omitted item should have been included in gross income." S. Rept. 91-1537 (1970), 1971-1 C.B. 606, 607-608; Estate of Krock v. Commissioner, 93 T.C. 672, 679 (1989). Petitioner testified that, except for the house and car, she did not really benefit from what her husband was doing. She stated that the Wrights did not take trips together and, if she wanted something, she used the money she earned to buy it. However, the record shows that petitioner did benefit from the fact that the Wrights' 1980, 1981, and 1982 returns understated their income tax. For example, petitioner and Mr. Wright owned a home with a pool and an interest in resort property. The home was awarded to *758 petitioner at her divorce from Mr. Wright and she gave the interest in the resort property to her children. Mr. Wright owned a Cessna aircraft during the Wrights' marriage. Petitioner sometimes traveled in this plane with Mr. Wright when he made trips to Houston, in order to visit her family there. Petitioner also bought in 1981 or 1982 a 1982 Datsun 280Z, which cost $ 20,205. Petitioner testified that she knew that her husband had a couple of hundred CD's but did not know the extent of their value or that her name was on them. She stated that the proceeds of the CD's were never made available to her and that she did not have access to them. After Mr. Wright was incarcerated, petitioner cashed some of these CD's to pay off loans. We find that petitioner benefited significantly from the income which was omitted from the Wrights' 1980, 1981, and 1982 returns. Accordingly, petitioner does not meet the fourth requirement for innocent spouse status. Because we have found that petitioner should have known of the understatement of income tax, and that she benefited from it, we hold that petitioner is not an innocent spouse pursuant to section 6013(e). 2. Fraud
The next *759 issue for decision is whether petitioner is liable for additions to tax for fraud for 1980, 1981, and 1982 under section 6653(b)/6653(b)(1), and under section 6653(b)(2) for 1982. For purposes of section 6653(b), fraud means "actual, intentional wrongdoing," Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing. Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Castillo v. Commissioner, 84 T.C. 405, 408 (1985); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Respondent must establish: (1) That petitioner has underpaid her taxes for each year, and (2) that some part of the underpayment *760 was due to fraud. Sec. 6653(c); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). The Commissioner must show fraud resulting in an underpayment for each taxable year in which fraud had been determined. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969). "The conscious purpose to defraud proscribed by the statute does not include negligence, carelessness, misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956). Fraud is never presumed; rather, it must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud, however, may be inferred from any conduct, the effect of which would be to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), or otherwise prevent the collection of taxes, Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; or where an entire course of conduct establishes the necessary intent. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), *761 affg. T.C. Memo. 1985-148; Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stone v. Commissioner, supra at 224. Fraud is not imputed from one spouse to another. In the case of a joint tax return, respondent must prove fraud as to each spouse charged with liability for the addition to tax. Sec. 6653(b)(3); Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Stone v. Commissioner, supra at 227-228. Respondent gives several arguments why the fraud addition applies to petitioner. Respondent argues, first, that it was decided in Mr. Wright's trial that the joint returns filed by the Wrights understated the taxable incomes and the income tax liabilities on the Wrights' returns for 1980, 1981, and 1982 and that such understatements were due to a willful attempt to evade the tax. Respondent argues that this collaterally estops petitioner from subsequently denying the specific intent *762 requirement of civil fraud under section 6653(b). We agree with respondent that conviction of tax evasion under section 7201 is equivalent to civil tax fraud under section 6653(b), Amos v. Commissioner, 43 T.C. 50, 57 (1964), affd. 360 F.2d 358 (4th Cir. 1965), and that, thus, a taxpayer who has been convicted of tax evasion is estopped from denying that his tax return was fraudulent. Petitioner, however, was not convicted of tax evasion. Sec. 6653(b)(3); Hicks Co. v. Commissioner, supra at 1030; Stone v. Commissioner, supra at 227-228. Respondent correctly asserts that petitioner stipulated that estoppel is effective in this case. However, we are convinced that petitioner did not intend estoppel to apply to the fraud addition. At trial, while petitioner's counsel stated that estoppel is effective, he did so in the context of discussing the grossly erroneous factor of petitioner's innocent spouse claim, not in the context of discussing the fraud addition. Furthermore, we are not bound by the parties' stipulations of law, especially when the stipulations *763 are erroneous, as they are here. Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289 (1917); King v. United States, 641 F.2d 253, 258 (5th Cir. 1981). Respondent next discusses the Wrights' financial expenditures during the years at issue in light of petitioner's knowledge of her comparatively low annual income. Respondent seems to suggest that petitioner knew of the understatement in the years at issue. While we have found that petitioner should have known of the understatement, we do not believe that her activities during the years at issue constituted "actual, intentional wrongdoing," Mitchell v. Commissioner, supra at 310, or the intentional commission of acts for the specific purpose of evading a tax believed to be owing. Webb v. Commissioner, supra; McGee v. Commissioner, supra.
Finally, respondent asserts that petitioner did several things after her former husband's arrest which show fraud. For example, respondent says that petitioner cashed hundreds of thousands of dollars worth of CD's and paid off *764 several loans; converted the remaining balance into cashier's checks and subsequently converted these checks, in three separate transactions, into cash; and deposited some money from the cashed CD's in a savings and loan in Houston under her maiden name. Respondent's argument is based on uncorroborated testimony from Katherine Lewis, a revenue agent who was involved in auditing the Wrights' returns for the years in issue. We find that respondent has not proved by clear and convincing evidence that petitioner is liable for additions to tax for 1980, 1981, or 1982 under section 6653(b)/6653(b)(1) or for 1982 under section 6653(b)(2). 3. Substantial Understatement
The next issue for decision is whether petitioner is liable for the addition to tax for substantial understatement of income tax for 1982 under section 6661. Section 6661(a) imposes an addition to tax of 25 percent on any underpayment attributable to a substantial understatement of income tax in any taxable year. A substantial understatement exists in a year if the understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement is *765 the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Petitioner does not argue that this exception applies here. A taxpayer may also reduce or eliminate the amount of a substantial understatement if the taxpayer adequately disclosed relevant facts with respect to an item's tax treatment on the return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii); sec. 1.6661-4(b) and (c), Income Tax Regs. Petitioner does not argue that this exception applies and she has not shown that she included documentation with regard to the understatement sufficient to enable respondent to identify a potential controversy. Accordingly, we find that she has not done so. Petitioner has not sustained her burden of proving that she is not liable for the addition to tax under section *766 6661. Accordingly, if, after the Rule 155 determination, the amount of the understatement for 1982 exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return, petitioner is liable for the section 6661 addition to tax. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. For taxable years 1980 and 1981, sec. 6653(b)↩. 2. Fifty percent of the interest due on the portion of the underpayment attributable to negligence.↩